PEOPLE v DAVIS

Docket No. 44646. Submitted September 3, 1980, at Lansing.—Decided
    December 15, 1980.

Clarence E. Davis was convicted of third-degree criminal sexual
    conduct (sexual penetration of another whom the actor knows
    or has reason to know is mentally incapacitated or defective) in
    the Washtenaw Circuit Court, Patrick J. Conlin, J. Defendant
    appeals. *Held:*

1. The crime requires proof only of the general intent to
commit sexual penetration. Intoxication preventing the defen-
dant from knowing that the other person is mentally defective
where a reasonable person would have known is not a defense.

2. Advanced intoxication may preclude the effective waiver of
*Miranda* rights.

3. Failure of a defendant's counsel to move to suppress
statements made by defendant where the evidence indicates
that defendant may not have effectively and voluntarily waived
his right to remain silent is a serious error requiring a remand
to determine the issue of voluntariness.

Reversed with instructions.

1. RAPE — INTENT — MENTAL DEFECTIVES — STATUTES.
    The crime of sexual penetration where the actor knows or has
    reason to know that the victim is mentally defective requires
    proof of only the general intent to commit sexual penetration
    (MCL 750.520d[1][c]; MSA 28.788[4][1][c]).

2. RAPE — DEFENSES — INTOXICATION — MENTAL DEFECTIVES —
    STATUTES.
    Intoxication sufficient to prevent a defendant from knowing that
    another is mentally defective is not a defense to third-degree

REFERENCES FOR POINTS IN HEADNOTES
[1] 65 Am Jur 2d, Rape §§ 3, 9, 99.
    Rape or similar offense based on intercourse with woman who is
    allegedly mentally deficient. 31 ALR3d 1227.
[2] 65 Am Jur 2d, Rape § 35.
[3] 29 Am Jur 2d, Evidence § 577.
[4] 29 Am Jur 2d, Evidence § 529.

criminal sexual conduct where a reasonable person would know that the victim was mentally defective (MCL 750.529d[1][c]; MSA 28.788[4][1][c]).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — MIRANDA RIGHTS — WAIVER — INTOXICATION.
Advanced intoxication may preclude the effective waiver of *Miranda* rights.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — STATEMENTS OF DEFENDANT — VOLUNTARINESS — ASSISTANCE OF COUNSEL — APPEAL.
Failure of a defendant's counsel to move to suppress statements made by defendant where the evidence indicates that defendant may not have effectively and voluntarily waived his right to remain silent is a serious error requiring a remand to determine the issue of voluntariness.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *James S. Sexsmith,* Assistant Prosecuting Attorney, for the people.

*Joseph H. Wagner, P.C.,* for defendant.

Before: DANHOF, C.J., and BRONSON and CYNAR, JJ.

BRONSON, J. Following a jury trial in the Washtenaw County Circuit Court, defendant was convicted of third-degree criminal sexual conduct in violation of MCL 750.520d(1)(c); MSA 28.788(4)(1)(c) (sexual penetration with a person "the actor knows or has reason to know" is mentally defective, mentally incapacitated, or physically helpless). Defendant was sentenced to serve a term of 10 to 15 years in prison, and appeals by leave granted.

On July 4, 1975, complainant, a 61-year-old woman suffering from chronic schizophrenia who had been a patient at the Ypsilanti State Hospital for 34 years, was wandering around the grounds of

the institution. Defendant offered to drive her back
to her ward. Complainant willingly entered his car
and was driven to a secluded area some eight to
ten miles from the hospital. Defendant removed
his trousers and asked the complainant to perform
an act of fellatio, which she did. She described
defendant's manner as well-behaved, but intoxi-
cated. She also testified to being both scared and
at ease and claimed to have communicated with
defendant through telepathy.

When defendant fell asleep, complainant "ran
away" to some nearby houses. The police were
called, and complainant requested that they take
her back to the hospital. The police were curious
to learn how she had gotten to that location, and
the complainant told what had happened. Thereaf-
ter, she led the police to the site where the act of
fellatio occurred. Defendant was asleep in the back
of his car, naked from the waist down. He was
highly intoxicated, and a police officer was unable
to wake him by either shouting or shaking.

Defendant contended that he did not commit the
crime. Alternatively, he argued that even if he did
commit the act, he was so intoxicated that he
could not have known nor have reason to know
that complainant was mentally defective.

I

The initial issue we face on appeal involves a
question of first impression concerning the con-
struction to be given MCL 750.520d(1)(c); MSA
28.788(4)(1)(c).[1] Defendant contends that the trial

[1] The pertinent portion of the statute provides:

"(1) A person is guilty of criminal sexual conduct in the third
degree if the person engages in sexual penetration with another
person and if any of the following circumstances exist:

* * *

court erred by refusing to instruct the jury that his intoxication could be a defense to the crime if his drunken state precluded him from knowing or having reason to know that the victim was mentally defective.

We note at the outset that defendant misses the mark by arguing the "knows or has reason to know" language of the statutory provision in question imposes a specific intent element which must be established in order to sustain a conviction. Specific intent is an intent in addition to the general intent to do the physical act which the crime requires. *People v Lerma,* 66 Mich App 566, 569; 239 NW2d 424 (1976), *lv den* 396 Mich 848 (1976). A person who has reason to know of his partner's mentally defective condition without, in fact, being truly cognizant of its existence has only the general intent to commit the act of sexual penetration, and no additional intent to engage in penetration with one he actually knows is mentally incapacitated. Indeed, by the plain language of MCL 750.520d(1)(c); MSA 28.788(4)(1)(c), an individual who did not know of his partner's mental defect and who would never have engaged in the act of penetration had he known of said defect could nonetheless be convicted of third-degree criminal sexual conduct if he had reason to know of the mental incapacity. Thus, it is clear that the Legislature did not mandate proof of a specific intent which had to be established beyond the general intent to engage in sexual penetration, before a conviction for third-degree criminal sexual conduct could be sustained.

It is our belief that by including the "knows or has reason to know" language, the Legislature did

---

"(c) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless."

not desire to excuse a defendant who is unreasonable in his conclusion that the victim could consent to the sexual penetration. Rather, we believe that the Legislature was desirous of protecting individuals who have sexual relations with a partner who appears mentally sound, only to find out later that this is not the case.[2] A mental illness which renders a person "mentally defective" within the meaning of MCL 750.520a(c); MSA 28.788(1)(c) is not necessarily always apparent to the world at large. For instance, a woman who suffers from a multiple personality defect might seem "normal" in each of her personality manifestations, yet, from a psychological perspective, be unable to appraise the nature of her conduct. Similarly, an individual suffering from schizophrenia may have periods of relative lucidity and normalcy intermingled with periods when the mental disorder is evident. We are convinced that the Legislature only intended to eliminate liability where the mental defect is not apparent to reasonable persons.

Defendant's most forceful argument that intoxication can be a defense to the variety of third-degree criminal sexual conduct under consideration here is the fact that MCL 750.341; MSA 28.573, which was repealed by enactment of the new criminal sexual conduct statute, provided that carnal knowledge of any female who is a patient in a state or county institution for the insane or feebleminded constituted a crime. This statute required neither knowledge nor any specific intent. Defendant contends that this fact shows the "knows or has reason to know" language of MCL

[2] This is not all that unlikely to happen. In our society "pick-up" bars are common. A man might meet a mentally defective woman in such an establishment who appears normal, bed her, and later discover that she is severely mentally ill.

750.520d(1)(c); MSA 28.788(4)(1)(c) was utilized because the Legislature was desirous of making the crime one requiring a specific intent or real knowledge.

Defendant's construction is plausible. However, we think our construction is more probably what was intended by the Legislature, and the purpose of statutory construction is to effect the legislative intent. *Melia v Employment Security Comm*, 346 Mich 544, 562; 78 NW2d 273 (1956). The rationale behind statutes prohibiting sexual relations with mentally defective persons is that such persons are presumed to be incapable of truly consenting to the sexual act. This rationale remains just as cogent in light of the enactment of MCL 750.520d(1)(c); MSA 28.788(4)(1)(c). We are therefore unwilling to assume that the Legislature in using the "knows or has reason to know" language intended a result which is more inconsistent with this rationale than a fair reading of the phrase actually requires. Had the Legislature intended a more drastic departure from the underlying policy behind the prohibition of sexual relations with those mentally defective, we would have expected a clearer expression of this intention.

Michigan's criminal sexual conduct statute is substantially similar to that of New York. The New York statute was enacted in 1965 and became effective on September 1, 1967. The Michigan statute was enacted in 1974, and became effective on April 1, 1975. By NY Penal Laws § 130.10, a defendant states an affirmative defense if he *"did not know"* (without regard to "reason to know") of the conditions responsible for the incapacity to consent.[3] It is difficult for us to believe that those

---

[3] The relevant New York provision states:

"In any prosecution under this article in which the victim's lack of

who were active in drafting the Michigan statute were unfamiliar with the New York statute. Thus, had the Legislature been desirous of making lack of knowledge, even if unreasonable or caused by intoxication, a defense in Michigan, we would have expected language similar to that employed in the New York statute to be utilized in the Michigan statute.

## II

At trial, statements made by defendant were introduced into evidence, without counsel's objection. Defendant alleges that the post-arrest statements should not have been admitted at trial because they resulted from continued interrogation after he indicated that he wanted to remain silent, they were coerced through the use of threats, and the police interrogated him at a time that they knew he was incapable of effectively understanding or waiving his *Miranda*[4] rights, due to his intoxication. Defendant further contends that his trial attorney failed to provide effective representation by neglecting to move for a *Walker*[5] hearing.

In *People v Ginther,* 390 Mich 436, 442-443; 212 NW2d 922 (1973), the Supreme Court held that the appellate courts ordinarily should not consider issues which depend on an analysis of facts not of record. The *Ginther* rule pertains to a claim of ineffective assistance of counsel.

consent is based solely upon his incapacity to consent because he was mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense that the defendant, at the time he engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent."

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] *People v Walker (On Reh),* 374 Mich 331; 132 NW2d 87 (1965).

In the instant case, although there remain factual questions to be answered, the record below clearly indicates that defendant's trial counsel should have at least moved to suppress the statements, so *Ginther* is not applicable. The arresting officer who conducted the interrogation admitted defendant initially said that he did not want to answer any questions. According to the officer, however, he immediately thereafter began to discuss the incident. This testimony differed from that given by the defendant, who said the arresting officer stated that he was going to "jam" him until he received some answers.

More important is the evidence tending to show that defendant was so intoxicated at the time he was questioned that he could not effectively waive his *Miranda* rights. Defendant stated that he and a friend consumed a pint of Cutty Sark, a fifth of 120-proof Black Bull whiskey, a pint of an unknown whiskey, a large but undetermined quantity of wine, and four to five six-packs of beer on the day in question. There is no doubt that defendant was highly intoxicated at the time of his arrest. Defendant had to be physically dragged to the police patrol car as he could not be aroused by shaking and shouting.

The interrogation of defendant occurred two and one-half hours following his arrest. The questioning officer stated that he had done nothing to sober defendant up. He also said, "I can't say for sure that he wasn't still drunk. He appeared not to be drunk".

Advanced intoxication, whether the product of drugs or alcohol, may preclude the effective waiver of *Miranda* rights. *People v Dunlap,* 82 Mich App 171; 266 NW2d 637 (1978), *People v Crawford,* 89 Mich App 30; 279 NW2d 560 (1979).

In *People v Degraffenreid,* 19 Mich App 702, 716; 173 NW2d 317 (1969), Justice, then Judge, LEVIN wrote:

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial."

We are convinced that counsel's failure to move for a *Walker* hearing was a serious mistake, which may have deprived defendant of a reasonably likely chance of acquittal. However, since a determination of the seriousness of the error requires further fact-finding that we are ill-prepared to make, we remand to the trial court for a determination of whether defendant voluntarily and effectively waived his Fifth Amendment rights.

Remanded. We retain jurisdiction. The remand hearing is hereby ordered to take place within 60 days.