PEOPLE v COX

Docket No. 250773. Submitted August 3, 2005, at Lansing. Decided
    October 18, 2005, at 9:05 a.m. Leave to appeal sought.

Jeffery D. Cox was convicted by a jury in the Calhoun Circuit Court
    on two counts of third-degree criminal sexual conduct for sexual
    acts with a person whom the defendant knew or had reason to
    know was mentally incapable or mentally incapacitated. At the
    sentencing hearing, the defendant moved for an adjournment to
    allow defense counsel to prepare a motion for a mistrial, alleging
    that information provided by the prosecution just before the
    hearing indicated that the victim had tendered a plea to a larceny
    charge and therefore was not mentally incapable or mentally
    incapacitated. The court, Allen L. Garbrecht, J., denied the motion
    and advised the defendant that the claim is more properly raised in
    a motion for a new trial. The defendant did not file a motion for a
    new trial or a motion for relief from judgment, but instead
    appealed.

The Court of Appeals *held*:

1. There was sufficient evidence in support of the convictions.
    Sufficient evidence was presented from which a rational trier of
    fact could find that the victim suffered from a mental disease or
    defect that rendered him incapable of appraising the nature of his
    conduct or consenting to the sexual relationship with the defen-
    dant. Sufficient evidence was presented from which a rational trier
    of fact could find that the defendant knew or had reason to know
    that the victim was mentally incapable of consenting to a sexual
    relationship.

2. The defendant is not entitled to a new trial on the basis of a
    discovery violation or newly discovered evidence. A criminal de-
    fendant has a due process right to obtain exculpatory evidence
    possessed by the prosecution if it would raise a reasonable doubt
    about the defendant's guilt. In order to establish a violation of this
    right on the basis of the information concerning the victim's plea
    to a larceny charge, the defendant had to prove, but did not, that
    the state possessed evidence favorable to him, that he did not
    possess the evidence nor could he obtain it himself with any
    reasonable diligence, that the prosecution suppressed the favor-

able evidence, and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that the evidence itself, not merely its materiality, was newly discovered, that the newly discovered evidence was not cumulative, that the defendant could not, using reasonable diligence, have discovered and produced the evidence at trial, and that the new evidence makes a different result probable on retrial. In this case, although the evidence of the victim's plea was newly discovered and not cumulative, and the record supports a conclusion that the evidence was not discoverable and could not have been produced at trial, the record does not show that the evidence would make a different result probable.

3. Prosecutorial misconduct denying a fair and impartial trial did not occur in connection with the prosecutor's remarks to the jury. The remarks, in context, were not a call to convict as a matter of civic duty; rather, they were proper argument based on the facts in evidence and reasonable inferences drawn from those facts.

4. The defendant was not denied the effective assistance of counsel at trial. The prosecutor's remarks to the jury were proper, and defense counsel was not ineffective for failing to raise futile objections to those remarks.

5. The trial court did not abuse its discretion when scoring certain offense variables. There was evidence in the record to support a score of 15 points for offense variable 8, MCL 777.38(1)(a), because the victim was transported to a place of greater danger. Fifteen points were properly scored for offense variable 10, MCL 777.40(1)(a) and (3)(a), because the defendant exploited a vulnerable victim and predatory conduct or preoffense conduct directed at the victim for the primary purpose of victimization was involved. Twenty-five points for offense variable 11, MCL 777.41(1)(b), were properly scored for sexual penetration. In the absence of scoring errors or inaccurate information relied on for sentencing, the defendant's sentences must be affirmed.

Affirmed.

COOPER, P.J., dissenting, stated that the prosecution withheld highly relevant, exculpatory evidence that negated an element of the charged offenses. The purpose of the proscription against engaging in sexual acts with a mentally incapable person is to protect those presumed to be incapable of truly consenting to the sexual act. A rational trier of fact could find that a person deemed capable of understanding the nature and object of criminal pro-

ceedings against him and the legal effects of pleading guilty or no contest to criminal charges is also capable of understanding the physical, emotional, and moral nature and object of a sexual act. The defendant's inability to place the highly material and relevant evidence of the victim's plea to a larceny charge affected the outcome of the defendant's trial and should entitle him to a new trial.

1. CONSTITUTIONAL LAW — DUE PROCESS — CRIMINAL PROSECUTIONS — DISCOVERY BY DEFENDANTS.

A criminal defendant who claims a due process right of access to evidence in the possession of the prosecution must prove that the state possessed evidence favorable to the defendant, that the defendant did not possess the evidence and could not have obtained it with any reasonable diligence, that the prosecution suppressed the favorable evidence, and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

2. CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE.

A motion for a new trial based on newly discovered evidence may be granted upon a showing that the evidence itself, not merely its materiality, is newly discovered, that the evidence is not merely cumulative, that the defendant could not with reasonable diligence have produced it at trial, and that the evidence makes a different result probable on retrial.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *John A. Hallacy*, Prosecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari K. Grove*) for the defendant.

Before: COOPER, P.J., and BANDSTRA and KELLY, JJ.

BANDSTRA, J. Defendant appeals as of right his jury trial conviction on two counts of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(c), for engaging in anal and oral sex with a 17-year-old, mentally incapable victim. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to convict him of the CSC III charges. We disagree. We review de novo challenges to the sufficiency of the evidence in a criminal trial to determine whether, when viewing the evidence in the light most favorable to the prosecutor, a rational trier of fact could have found all the elements of the charged crime to have been proven beyond a reasonable doubt. *People v Bowman*, 254 Mich App 142, 151; 656 NW2d 835 (2002). Additionally, we are "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.520d(1)(c) provides that a person is guilty of CSC III if he or she engages in sexual penetration with another person who he or she knew or had reason to know was mentally incapable, mentally incapacitated, or physically helpless. " 'Mentally incapable' means that a person suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MCL 750.520a(g).

Defendant first argues that the evidence was insufficient to support a finding that the victim was mentally incapable because the victim attended school, was able to perform automotive repairs, could hold conversations and maintain relationships with people, and could choose his sexual partner. Defendant contends that the victim was "mentally capable" because he had "not only an understanding of the physical act [of sex] but also an appreciation of the nonphysical factors, including the moral quality of the act, that accompany such an act," as described by this Court in *People v Breck*, 230 Mich App 450, 455; 584 NW2d 602 (1998). However, a review

of the record indicates that there was ample evidence from which to conclude that the victim was mentally incapable of consenting to the sexual relationship with defendant.

When asked about the sexual acts between himself and defendant, the victim stated, "He—I just wanted to try something new and so he asked me if I wanted to, and I said yeah, so we went on." The victim felt that "[i]t was kind of dumb," and replied "kind of" when asked if he knew that the sexual relationship with defendant was homosexual in nature.

The victim's Family Independence Agency caseworker testified that the victim was not ready to live on his own and that he was easily manipulated and persuaded to do things that he probably would not do without another's influence. The caseworker's opinion was that, mentally, the victim was about 12 or 13.

A psychologist who examined the victim testified that the victim had a significant history of abuse and neglect, and was mentally deficient, functioning in the "borderline" range of intelligence, which is a step below "below average" and a step above "mental retardation." He opined that the victim was developmentally around the age of 11, 12, or 13. He explained that if compared to a 100 of his peers, the victim would function in the lowest three to five percent range because of his lower intelligence, poor language development, and inability to adapt or be flexible when presented with new situations. He indicated that the victim has difficulty interpreting things, lacks self-insight or self-awareness, and does not think about his own behavior, but acts out and deals with the consequences later. He stated that the victim's personality issues and tendency not to consider his actions leaves him vulnerable to exploitation because "he is an easy child to manipulate." He charac-

terized the victim as a "pretty immature individual," and opined that even though the victim "certainly . . . knew what was proposed" and was aware of his conduct, he could not appreciate the social or moral significance of his acts relating to the homosexual encounter with defendant and was incapable of making an informed decision about sexual involvement.

A counselor with a significant history of treating the victim described him as impressionable and very susceptible to manipulation by others, and characterized him as a follower. He testified that the victim's troubles occur when he is talked into doing things or following another's lead and that he allows his personal rights to be violated to gain acceptance by others. He stated that the victim's need for acceptance is so great that he gravitates to anyone who will pay attention to him and cannot distinguish whether a person is being genuine in their actions. He stated that the victim "absolutely" has a mental disability and opined that the victim functions emotionally on a level between the ages of eight and ten, and intellectually at a fourth- or fifth-grade level. He also opined that the victim is unable to recognize the consequences of a homosexual relationship and that the victim would confuse a sexual relationship with his need for acceptance, thereby placing himself in a dangerous or jeopardizing situation.

This Court, in *Breck, supra* at 455, held that the term "mentally capable" encompasses an understanding of both the physical and nonphysical factors of a sex act. The evidence presented at trial supports a finding that, regardless of the victim's awareness of the events as they occurred, he did not understand the nonphysical aspects of the sex acts and was mentally incapable of

consenting to the sexual relationship with defendant. Viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a rational trier of fact could find that the victim suffered from a mental disease or defect that rendered him incapable of appraising the nature of his conduct. MCL 750.520a(g).

Defendant also argues that the evidence was insufficient to support a finding that he knew or had reason to know that the victim was mentally incapable of consenting to a sexual relationship because, while reasonable persons coming into contact with the victim would notice that he was "slow," they would not believe him mentally incapable of appraising the nature of his conduct. Defendant supports his assertion with this Court's statements in *People v Davis*, 102 Mich App 403, 407; 301 NW2d 871 (1980), that the Legislature's inclusion of the "knows or has reason to know" language in the statute was intended to "protect[] individuals who have sexual relations with a partner who appears mentally sound, only to find out later that this is not the case." This Court concluded that "[t]he Legislature only intended to eliminate liability where the mental defect is not apparent to reasonable persons." *Id.* at 407.

However, several witnesses testified that the fact that the victim was mentally deficient is readily noticeable after only a short period of interaction. The psychologist opined that a reasonable person could discern within an hour that the victim has a mental defect, because the victim has inarticulate language, difficulty understanding words, and does not make inquiries typical of a 17-year-old. There was also evidence that defendant had ample opportunity to notice these limitations. The victim testified that he had been to

defendant's house between five and ten times and that defendant visited him at his foster home. The investigating police officer testified that defendant admitted harboring the victim when he ran away from his foster home.

Viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented from which a rational trier of fact could find that defendant knew or had reason to know that the victim was mentally incapable of consenting to a sexual relationship. Moreover, sufficient evidence was presented from which a rational trier of fact could find that all the elements of CSC III were proven beyond a reasonable doubt; therefore, defendant is not entitled to relief on this issue.

## II. NEW TRIAL

Defendant next argues that he is entitled to a new trial on the basis of a discovery violation and suppression of evidence that the victim pleaded to a larceny charge, or, in the alternative, on the basis of the victim's plea characterized as newly discovered evidence. Specifically, defendant argues that the fact that the victim entered a plea would have rebutted the prosecution's theory that the victim was mentally incapable of consenting to sexual relations on the basis that a defendant must be deemed competent in order for a trial court to accept a plea. See *People v Kline*, 113 Mich App 733, 738; 318 NW2d 510 (1982).

We note that the record contains no substantiated information regarding the victim's plea other than that placed on the record at defendant's sentencing hearing. Aside from the prosecutor's unverified indication that the plea was to a charge of larceny involving less than $200, MCL 750.356a(2)(a), the record is devoid of

information concerning the date of the plea, the charge or charges at issue, and whether it was a guilty plea or a no contest plea.

The record indicates that at defendant's sentencing hearing the trial court denied defendant's motion to adjourn so that defense counsel could prepare a motion for a mistrial and advised defendant that the appropriate forum in which to address the issue was a motion for a new trial; however, defendant failed to preserve the issue by moving for a new trial in the lower court under MCR 2.611(A)(1)(f) or by moving for relief from judgment under MCR 2.612(C)(1)(b). *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Consequently, our review is limited to plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). In order to establish a *Brady* violation, a defendant must prove: (1) that the state possessed evidence favorable to the defendant; (2) that the defendant did not possess the evidence nor could the defendant have obtained it with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *People v Lester*, 232 Mich App 262, 281; 591 NW2d 267 (1998).

Defendant has failed to establish a *Brady* violation. Defendant has not proven that the prosecution possessed evidence that was favorable to him, i.e., that the

victim pleaded to a larceny charge. Indeed, MCR
6.201(B)(1) requires a prosecutor to provide a defen-
dant with any exculpatory information or evidence
known by the prosecutor, and the prosecutor indicated
that he had just learned of the information on the day of
the sentencing hearing. Moreover, even if the prosecu-
tion knew of the victim's criminal history, defendant
failed to pursue the proper channels for obtaining such
information—the prosecution's answer to defendant's
disclosure demand indicated that the criminal histories
of witnesses would only be provided to defense counsel
upon court order, and defendant failed to move for a
discovery order. As such, defendant's reliance on *People
v Pace*, 102 Mich App 522, 530-531, 302 NW2d 216
(1980), in which this Court held that a prosecutor's
violation of a discovery order, even if done inadvertently
in good faith, requires that a defendant's conviction be
reversed "unless it is clear that failure to divulge was
harmless beyond a reasonable doubt," is inapposite.
Additionally, defendant has not proven that had the
evidence been disclosed, a reasonable probability exists
that the outcome of the proceedings would have been
different. The record does not establish whether the
plea was contemporaneous with the victim's alleged
consent to sexual penetration in this case. If it was not,
it would have made no difference whatsoever to the
fact-finder's determination on the consent issue. Fur-
ther, even if it was contemporaneous, a determination
that the victim was competent to enter a plea has little,
if anything, to do with the mental capacity to consent to
a sexual relationship.[1] Defendant has failed to establish

---

[1] The procedures for determining a criminal defendant's competence to
enter a plea are ultimately rooted in principles of due process, to protect
incompetent defendants from indefinite denials of liberty. *People v
Bowman*, 141 Mich App 390, 399; 367 NW2d 867 (1985); *People v
Belanger*, 73 Mich App 438, 447-450; 252 NW2d 472 (1977). Contrast

plain error affecting his substantial rights, and is not entitled to a new trial on the basis of a *Brady* violation.

Defendant argues in the alternative that he is entitled to a new trial on the basis of the victim's plea, which he characterized as newly discovered evidence. For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003); MCR 6.508(D).

The evidence of the victim's plea was newly discovered and not cumulative, and the record supports a conclusion that the evidence was not discoverable and could not have been produced at trial. However, as noted above, the record does not show that evidence regarding the plea would make a different result probable on retrial. Again, defendant has failed to establish plain error affecting his substantial rights, and he is not entitled to a new trial on the basis of newly discovered evidence.

### III. PROSECUTORIAL MISCONDUCT

Defendant next alleges several instances of prosecutorial misconduct. We review de novo claims of prosecu-

---

MCL 330.2020(1) (a defendant is incompetent to stand trial, and, by analogy, to enter a plea, "only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner") with MCL 750.520a(g) (a person is "mentally incapable" if he or she suffers from a mental disease or defect that renders him or her temporarily or permanently incapable of appraising the nature of his or her conduct).

torial misconduct to determine whether defendant
was denied a fair and impartial trial. *People v Acker-
man*, 257 Mich App 434, 448; 669 NW2d 818 (2003).
However, defendant failed to object to the alleged
instances of prosecutorial misconduct; therefore,
they are unpreserved and our review is limited to
plain error affecting defendant's substantial rights.
*Id.*

When reviewing a claim of prosecutorial miscon-
duct, we examine the pertinent portion of the record
and evaluate a prosecutor's remarks in context.
*People v Callon*, 256 Mich App 312, 330; 662 NW2d
501 (2003). Further, the propriety of a prosecutor's
remarks depends on the particular facts of each case.
*Id.* Prosecutors are free to argue the evidence and any
reasonable inferences arising from the evidence, *id.*,
and "need not confine argument to the 'blandest of all
possible terms . . . .' " *People v Aldrich*, 246 Mich App
101, 112; 631 NW2d 67 (2001), quoting *People v
Marji*, 180 Mich App 525, 538; 447 NW2d 835 (1989).

Defendant argues that the following comments im-
properly appealed to the jurors' civic duty and imper-
missibly denigrated his character:

> It's the People's theory that the Defendant is 30 years
> old, likes young boys, grooms them, manipulates them,
> does things in order to take advantage of them.

* * *

> He's one of the worst type of predators we have in our
> society; somebody who takes advantage of somebody, goes
> after their weaknesses, and exploits those weaknesses for
> their own pleasure.

* * *

> That's somebody that shouldn't be allowed to co-exist
> with our young people, shouldn't be allowed to apply his
> trade on this young man or any other young man.

*  *  *

> [I]t's time to stop manipulating [the victim] and time to
> start expressing to [defendant] that this won't be tolerated
> in our society, and allow our children to grow, to prosper,
> without undue influence and manipulation for one's own
> sexual pleasures.

While a prosecutor may not argue that jurors should convict a defendant as part of their civic duty, *People v Matuszak*, 263 Mich App 42, 56; 687 NW2d 342 (2004), we find that the prosecutor's remarks, in context, were not a call to convict as a matter of civic duty; rather, they were proper argument based on the facts in evidence and reasonable inferences drawn from those facts. *Ackerman, supra* at 454; *Aldrich, supra* at 112. The prosecutor's comments were made in conjunction with comments concerning defendant's modus operandi and consciousness of guilt. The prosecutor argued that defendant "exploited [the victim's] weaknesses," and "manipulated [the victim] because he knew that he was a foster child, he knew he was vulnerable, he knew that if he spent a little time, maneuvered, that he'd be able to take advantage of him" "for his own sexual pleasures and gratification." The prosecutor focused on defendant's initial denial of any sexual involvement with the victim and argued that defendant lied because he knew he had done something wrong and did not truly believe that what he did was a consensual act between two mentally capable adults.

While a prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks," *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659

(1995), the challenged remarks simply conveyed the prosecutor's contention that the evidence demonstrated that defendant knowingly took advantage of a mentally challenged individual. Because a prosecutor "has wide latitude and may argue the evidence and all reasonable inferences from it," *Aldrich, supra* at 112, the prosecutor's comments were not improper and did not deny defendant a fair trial or meet the threshold for reversal based on unpreserved error. *Ackerman, supra* at 448-449.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel because defense counsel failed to object to the alleged instances of prosecutorial misconduct. Because defendant failed to move for a new trial or for a *Ginther*[2] hearing, our review is limited to mistakes apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). However, as noted above, the prosecutor's comments were not improper, and any objections by defense counsel on those grounds would have been meritless. Because counsel is not ineffective for failing to raise futile objections, defendant is not entitled to relief on this unpreserved issue. *Ackerman, supra* at 455.

### V. SCORING OF OFFENSE VARIABLES

Defendant next argues that the trial court erred in scoring offense variables (OV) 8, 10, and 11. "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v*

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

*Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002). Further, "[s]coring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996). "This Court shall affirm sentences within the guidelines range absent an error in scoring the sentencing guidelines or inaccurate information relied on in determining the defendant's sentence." *People v Leversee*, 243 Mich App 337, 348; 622 NW2d 325 (2000); MCL 769.34(10).

We find that the trial court did not abuse its discretion in scoring 15 points for OV 8 where the "victim was asported to another place of greater danger or to a situation of greater danger . . . ." MCL 777.38(1)(a). The victim testified that the sex acts occurred at defendant's house, and the investigating police officer testified that defendant admitted that the sex acts occurred at his house. This Court has explained that " 'asportation' as used in MCL 777.38(1)(a) can be accomplished without the employment of force against the victim." *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003). In that case, this Court upheld a score of 15 points for OV 8 where the victims were voluntarily moved to the defendant's home where the criminal acts occurred. *Id.* Additionally, in *People v Apgar*, 264 Mich App 321, 329-330; 690 NW2d 312 (2004) (opinion by Gage, J.), this Court upheld a score of 15 points for OV 8 where, despite a lack of force, the victim was transported from a friend's house to another, unfamiliar house where she was sexually assaulted. While the record here indicates that the victim had been to defendant's house on previous occasions, it also indicates that he was transported there by defendant. Further, in light of the sexual acts that subsequently occurred there, the transportation of the victim was to a place of greater danger. *Spanke, supra* at 648. Because there was evidence in the record to support a

score of 15 points for OV 8, the trial court's scoring decision did not constitute an abuse of discretion.

We find that the trial court did not abuse its discretion in scoring 15 points for OV 10 where defendant exploited a vulnerable victim, and "predatory conduct," or "preoffense conduct directed at a victim for the primary purpose of victimization," was involved. MCL 777.40(1)(a) and (3)(a). The victim testified that he had been to defendant's house five or ten times, and that defendant had visited him at his foster home. The investigating officer testified that defendant admitted harboring the victim as a runaway from a foster home. In addition, defendant's presentence investigation report indicates that the victim viewed pornographic material at defendant's home and that a large amount of pornographic material was found in defendant's home, including a videotape of a 16-year-old boy dancing and drinking alcohol in defendant's bedroom, and sleeping nude. Because there was evidence in the record to support a score of 15 points for OV 10, the trial court's scoring decision did not constitute an abuse of discretion.

We find that the trial court did not abuse its discretion in scoring 25 points for "one criminal sexual penetration" under OV 11, MCL 777.41(1)(b), where MCL 777.41(2)(a) directs that all sexual penetrations of the victim arising out of the sentencing offense be scored and MCL 777.41(2)(c) directs that points should not be scored for "the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." Defendant argues that the 25 point score for OV 11 is erroneous because the two criminal sexual penetrations here each resulted in a separate criminal sexual conduct (CSC) offense.[3] However, in *People v*

---

[3] Defendant also notes, without any suggestion why it might matter, that he was assigned ten points under prior record variable 7 for

*McLaughlin*, 258 Mich App 635, 676; 672 NW2d 860 (2003), this Court rejected the argument that OV 11 could not be scored because each of three penetrations was the basis of a separate CSC charge. This Court recognized that the language in MCL 777.41(2)(c), "[d]o not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense," is ambiguous because it could be interpreted as excluding other penetrations that also form the basis for a CSC charge, or as only excluding the one penetration that is the basis of the sentencing offense. *Id.* at 675-676. However, this Court agreed with *People v Mutchie*, 251 Mich App 273; 650 NW2d 733 (2002), that the proper interpretation of OV 11 requires the trial court to exclude the one penetration forming the basis of the offense when the sentencing offense itself is CSC I or CSC III. *Id.* at 676-677. Under *McLaughlin*, OV 11 was correctly scored. Because there was evidence in the record to support a score of 25 points for OV 11, the trial court's scoring decision did not constitute an abuse of discretion.

We affirm.

KELLY, J., concurred.

COOPER, P.J. (*dissenting*). I must respectfully dissent from the majority opinion of my colleagues. The prosecutor withheld highly relevant exculpatory evidence that negated an element of the charged offenses. This evidence certainly would have affected the outcome of

concurrent felony convictions. We consider any argument regarding prior record variable 7 or its effect on OV 11 to be abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

defendant's trial. Accordingly, I would vacate defendant's conviction and remand for a new trial.

Defendant was convicted of two counts of third-degree criminal sexual conduct for engaging in sexual acts with a mentally incapable young man. Such conduct is prohibited to protect those "presumed to be incapable of truly consenting to the sexual act."[1] The complainant in this case was 17-years-old and, therefore, was otherwise able to engage in consensual sexual acts.

During discovery, defendant requested from the prosecutor all potentially exculpatory information and the criminal history of all prosecution witnesses. Rather than make all the requested disclosures, the prosecutor indicated that the criminal history of the witnesses would only be provided upon court order. It was not until the week before sentencing that defense counsel learned that the complainant, who was allegedly mentally incapable of consenting to a sexual act, was mentally competent to enter a plea in an unrelated criminal action.[2]

Although this evidence involves the criminal history of a witness, the evidence is also clearly exculpatory and should have been disclosed by the prosecutor. A prosecutor, upon request, must provide a defendant with any known exculpatory information or evidence.[3] The prosecutor is under a constant duty to automatically disclose additional exculpatory information as it is

---

[1] *People v Breck*, 230 Mich App 450, 455; 584 NW2d 602 (1998).

[2] There is no indication on the record whether the complainant pled guilty or nolo contendere to the larceny charge. However, the nature of that plea would have no affect on this appeal or the lower court proceedings.

[3] MCR 6.201(B)(1).

discovered.[4] The prosecutor learned of the plea from the complainant's Family Independence Agency caseworker, who also served as a witness for the prosecution in this case. The prosecutor should have discovered this information in a timely fashion and made the required disclosure to defendant.

I disagree with the majority's determination that the prosecutor's failure to disclose this information was harmless. A trial court's previous determination that the complainant was competent to enter a plea is directly relevant to whether he was mentally capable of consenting to a sexual act. A trial court "may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. . . ."[5] The court must first determine that the defendant understands the legal ramifications of pleading guilty and the rights that he or she will give up in exchange for that plea.[6] The standard of competency to enter a plea of guilty or nolo contendere is the same as that to stand trial[7]—"[a] defendant to a criminal charge . . . shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner. . . ."[8]

Being "mentally incapable" of consenting to a sexual act means that "a person suffers from a mental disease or defect which renders that person temporarily or permanently incapable of appraising the nature of his

---

[4] MCR 6.201(H).

[5] MCR 6.302(A).

[6] MCR 6.302(B).

[7] *People v Belanger*, 73 Mich App 438, 447-448; 252 NW2d 472 (1977).

[8] MCL 330.2020(1); *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990).

or her conduct."[9] This inability to appraise the nature of his conduct encompasses both the physical act of sex and the nonphysical factors that accompany the act.[10] A rational finder of fact could find that a person who is deemed capable of understanding the nature and object of the criminal proceedings against him and the legal effects of pleading guilty or nolo contendere to criminal charges is also capable of understanding the physical, emotional, and moral nature and object of a sexual act.

The fact that a trial court deemed the complainant competent to enter a plea in criminal proceedings would directly negate an element of the charged offense—the complainant's ability to consent to sexual acts. However, at defendant's trial, the jury heard only the prosecution's undisputed evidence regarding the level of the complainant's mental ability. Defendant's inability to place this highly material and relevant evidence before his jury clearly affected the outcome of his trial. Accordingly, I would find that defendant was entitled to a new trial.

---

[9] MCL 750.520a(g).

[10] *Breck, supra* at 455.