# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NIZAM-U-DIN SAJID QURESHI,

        Defendant-Appellant.

UNPUBLISHED
January 5, 2016

No. 323247
Ingham Circuit Court
LC No. 13-000719-FH

Before: SAAD, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted by a jury of three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a) (person under the age of 13 and defendant over the age of 17) (CSC II), but was acquitted of an additional count of CSC II. The charges in this case arose from allegations by defendant's step-daughter that he sexually abused her between the years of 2007 and 2012, during which time the family lived at two different residences. Defendant was charged with two counts of CSC II for alleged sexual abuse at the first residence where the family lived until Spring 2010, and two counts of sexual abuse that were alleged to have occurred at the second residence where the family lived from 2010 until complainant's mother was informed of the allegations at the end of August 2012. He was sentenced to concurrent terms of 57 to 180 months in prison with credit for 29 days served and now appeals as of right. We reverse and remand for a new trial because we conclude that the defendant was denied effective assistance of counsel.

Defendant argues that he was denied effective assistance of counsel due to counsel's failure to object to the admission of hearsay or to witnesses vouching for the credibility of the complainant. To preserve this claim of ineffective assistance of counsel, a defendant must move for a new trial on this ground or for a hearing pursuant to *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005). Because defendant did not file a motion for new trial on these grounds or request an evidentiary hearing, this issue is not preserved. Our review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *Id.* at 453. We review for plain error unpreserved claims of constitutional error such as claims of ineffective assistance of counsel. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

The defendant identified four witnesses through whom numerous hearsay statements were admitted. The first witness was complainant's sister who testified extensively regarding

statements made to her by complainant with no objection. The witness recounted an incident where the complainant recounted defendant stumbling into her bedroom at night drunk commenting that a young actress was, "hot." Next, the sister's friend testified both to the fact that the sister reported that complainant had made statements to the sister about the actress incident and as to the details of statements attributed to complainant and defendant. Defense counsel made an initial objection to the triple hearsay that was overruled as "Background." The witness continued this line of testimony with no further objections. Complainant's mother provided testimony that the same friend of complainant's sister told the mother that defendant was touching complainant. Additionally, defendant highlighted instances where a fourth witness, Dr. Steven Guertin was allowed to testify as to statements made to him seven months after the last instance of abuse, subsequent to the Children's Protective Services (CPS) complaint and forensic interview with Deputy Annie Harrison. We will discuss each in turn.

First, we note the definition of hearsay. "Hearsay testimony is generally not admissible because the essential right of cross-examination is absent; and, therefore, the jury is not afforded the opportunity to test the credibility of the person making the statement." *People v Rea*, 38 Mich App 141, 142; 195 NW2d 809 (1972). In Michigan, "hearsay" is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). MRE 802 provides that hearsay is not admissible unless it falls under one of the hearsay exceptions set forth in the Michigan Rules of Evidence. "If, however, the proponent of the evidence offers the statement for a purpose other than to prove the truth of the matter asserted, then the statement, by definition, is not hearsay. MRE 801(c)." *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013). We are cautioned to carefully examine admitting a statement that contains hearsay for such other purposes. "In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful." *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

We note that "especially in child-sexual abuse cases," "a trial court should be particularly mindful that when a statement is not being offered for the truth of the matter asserted and would otherwise be inadmissible if a witness testified to the same at trial, there is a danger that the jury might have difficulty limiting its consideration of the material to its proper purpose" of providing context to the defendant's responses. *Musser*, 494 Mich at 357-358 (quotation marks and alteration marks omitted).

Our case is similar to *Douglas*, 496 Mich 557; 852 NW2d 587 (2014), another case where our Supreme Court examined the admission of hearsay statements for purposes other than their truth. In both cases, there was no physical evidence of or third-party witnesses to the abuse alleged by complainant in this case. As in *Douglas*, the prosecution in this case "built its case around the credibility of" complainant's in-court and out-of-court statements, and "the unreliability of" defendant's denials. *Id*. Under this scenario, multiple witnesses were allowed to testify to statements made by complainant regarding defendant touching her.

The first such witness, as noted before, was complainant's sister who was allowed to testify that complainant told her defendant was drunk and came into complainant's room, and was talking about a young actress from a TV show that was "hot." Her testimony was clearly an

out-of-court statement made by complainant. MRE 801(c). Although the statements could be seen as context for her conversation, as opposed to being offered for the truth of the statement, trial counsel should have lodged an objection because there was a grave danger in this child-sexual abuse case that the jury might have difficulty limiting its consideration of the material to its proper purpose, especially where there was no physical evidence of sexual abuse and no third-party witnesses. *Douglas*, 496 Mich at 567; *Musser*, 494 Mich at 357-358. Similarly, the friend of complainant's sister was twice allowed to testify on the basis that it was background information, not offered for the truth of the matter asserted, that complainant's sister told her complainant's allegations of defendant touching her. The testimony constituted improper hearsay testimony because the testimony of this friend, who subsequently spoke to complainant, could easily have been limited to the fact that she spoke with complainant after she received information from complainant's sister. Trial counsel should have objected to this testimony as well because of the danger that the jury would not limit the information to background context, rather seeing the statements as confirmation of the truthfulness of complainant's allegations. For the same reasons, trial counsel should have objected to the testimony of the complainant's mother that the friend told her defendant had been touching complainant; the testimony was not necessary to provide context and allowed the jury to view the testimony as corroborating complainant's testimony at trial lending to the truth of the matter asserted in the statements.

Apart from these witnesses, Dr. Guertin, who was qualified as an expert in the area of child sexual abuse, was allowed to testify without objection to statements made by complainant during his examination and interview of her that detailed defendant's alleged abuse. The prosecution elicited the testimony as part of complainant's medical history and as necessary for Dr. Guertin's medical treatment of complainant. Generally, "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment" are admissible as an exception to the hearsay rule. MRE 803(4); *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). "The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *People v* Garland, 286 Mich App 1, 8-9; 777 NW2d 732 (2009). "In cases of suspected child abuse, statements the child makes may be admitted under this exception when the totality of circumstances surrounding the statements supports that they are trustworthy." *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014). Factors to be considered on the issue of trustworthiness include:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination

(statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Meeboer*, 439 Mich at 324-325 (citations omitted).]

We conclude that trial counsel should have objected to Dr. Guertin's testimony regarding the sexual abuse allegations made by complainant on the basis that Dr. Guertin's interview and examination occurred seven months after the final alleged sexual abuse occurred, after the allegations were reported to CPS, and after Harrison's forensic interview. Thus, complainant's statements were meant to further the investigation and were not for medical diagnosis. *Id*. Moreover, Dr. Guertin's physical examination confirmed there was no physical evidence of the alleged abuse; he had not expected to find any given the allegations, but this would have further called into question the trustworthiness of complainant's statements.

Multiple witnesses were also allowed to improperly vouch for complainant's credibility. Although trial counsel initially objected to the prosecutor's question, complainant's sister was allowed to testify that while she originally was unsure about the complainant's allegations, she had changed her position. Without objection from trial counsel, the sister's friend implied that she believed complainant's allegations because she was allowed to testify that she questioned complainant because she needed to know if she was hearing the truth from complainant's sister, that she told complainant to be honest with her, and that "she didn't have to ask any more questions" when complainant started crying and jumped into her arms. The friend was further allowed to testify without objection as to complainant's allegations and that complainant's mother asked complainant whether the allegations were true—although not allowed to testify as to complainant's answer, the implication was that complainant said yes because the friend testified that complainant's mother then sent them into the house to pack bags. Ingham County Sheriff Department Deputy Annie Harrison was also allowed to vouch for complainant's allegations without objection. She testified that she never discovered that complainant recanted or changed her story and on redirect examination, she explained away any inconsistencies in complainant's allegations and trial testimony as common and typical in a sexual abuse case. Further, she opined that the majority of complainant's trial testimony and statements to Harrison were consistent.

As in *Douglas*, 496 Mich at 567, this case was essentially a one-on-one credibility contest between complainant and defendant and the hearsay evidence may have tipped the scales against defendant. In essence, the hearsay testimony kept repeating complainant's allegations, potentially making the jury believe there was more evidence against defendant than just complainant's allegations. *Gursky*, 486 Mich at 620-621. Similarly, the testimony from witnesses vouching for complainant, particularly the comments from Harrison explaining away any discrepancies between complainant's interview statements and trial testimony, was prejudicial to defendant in this case involving a credibility contest. *Musser*, 494 Mich at 349. Defendant was further prejudiced by Harrison's testimony that complainant's trial testimony was consistent with her interview statements because it is the jury's province to determine the facts of a case. *Id*.

When reviewing defense counsel's performance, we must first objectively "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide

range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Next, the defendant must show that trial counsel's deficient performance prejudiced his defense, in other words that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688. The defendant must establish both prongs of this test to prevail on his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 5-6; 594 NW2d 57 (1999). In addition, "to persuade a reviewing court that counsel was ineffective, a defendant must also overcome the presumption that the challenged action was trial strategy." *Id.* "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

Despite the inadmissibility of the hearsay and vouching-for-complainant testimony, trial counsel did not object to the vast majority of the statements. While there is a strong presumption that counsel's performance was sound trial strategy, *Strickland*, 466 US at 689, on this record we are unable to determine a sound trial strategy for not objecting to either the repeated hearsay references to complainant's allegations of sexual abuse, especially with no challenge to Dr. Guertin's testimony, or to witnesses vouching for complainant, particularly the testimony of Deputy Harrison.

We recognize that "this Court does not believe a case should be reversed merely because a few technically improper questions are asked. In fact, it is hard to find a trial where every question is exactly proper. In order to require a reversal some prejudice or patterns of eliciting inadmissible testimony must be shown." *People v Hooper*, 50 Mich App 186, 196; 212 NW2d 786 (1973). However, there is a reasonable probability that the outcome of defendant's trial would have been different but for this plain error. Like *Douglas*, 496 Mich at 586, "the prosecution's case hinged wholly on the credibility of" complainant's allegations, "making defense counsel's success in undermining that credibility more critical." Furthermore, as in *Douglas*, *id.* at 588, because complainant's credibility was critical to the prosecution's case, "the lack of evidence beyond her allegations," and the hearsay and vouching testimony already discussed, it is reasonably probable that but for this testimony, the outcome of defendant's trial may have been different. This is particularly true in light of the fact that the jury acquitted defendant of the one CSC II count; the allegations pertaining to this charge were not asserted by the complainant during Dr. Guertin's examination.

Because of our conclusion that defendant was denied the effective assistance of counsel, we find it unnecessary to address defendant's remaining unpreserved issues on appeal.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien