# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN LLEWELLYN MAYBIN,

        Defendant-Appellant.

UNPUBLISHED
April 19, 2018

No. 335180
Wayne Circuit Court
LC No. 15-009942-01-FH

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of third-degree criminal sexual conduct (sexual penetration of a physically helpless victim), MCL 750.520d(1)(c), and fourth-degree criminal sexual conduct (sexual contact with a physically helpless victim), MCL 750.520e(1)(c). Defendant was sentenced to 4 to 15 years' imprisonment for the third-degree criminal sexual conduct conviction and 23 days, time served, for the fourth-degree criminal sexual conduct conviction. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of events that occurred on August 29-30, 2015. On August 29, the victim went to a wedding where she admittedly had too much to drink causing her to become too intoxicated to drive home. One of the victim's friends testified that she drove the victim home, placed the victim in her bed and left. Defendant, who was the boyfriend of the victim's mother, testified that he had a key to the home and was present when the victim arrived home. Defendant testified that sometime in the early morning hours of August 30, 2015, the victim cried out that she was suffering from back pain. Defendant testified that he began to rub the victim's back "to comfort [the victim]." The victim then "pressed her body up against" defendant and started to grind "her butt on [his] front genitals." Defendant then held and caressed the victim for a few minutes in the spooning position as the victim continued to "push her body against" defendant as "she got aroused," and both she and defendant "got excited." Defendant testified that the two then had consensual sex.

The victim testified that at approximately 4:00 a.m. or 5:00 a.m. on August 30, 2015, the victim woke up naked in her bed with defendant on top of her. The victim testified that she knew that it was approximately 4:00 a.m. or 5:00 a.m. because that was "around the time [she] left the house." When the victim woke up with defendant on top of her, her head was no longer

-1-

near her bed's headboard; rather, her head was located at the foot of her bed. According to the victim, defendant was having sex with the victim, his lips were touching her breasts, and he used his hands to hold her wrists down to the bed, prompting the victim to tell defendant "to stop and to get off of [her]." Defendant never said anything and eventually stopped and left. The victim then sent a text message to her mother announcing that her mother's boyfriend had just raped her.

The jury found defendant guilty and the trial court sentenced defendant as indicated above. This appeal then ensued.

## II. ANALYSIS

### A. INSUFFICIENT EVIDENCE.

On appeal, defendant first argues that the prosecution failed to prove beyond a reasonable doubt that defendant knew or had reason to know that the victim was physically helpless.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014) (citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). It is the role of the trier of fact to determine the weight of the evidence and the credibility of the witnesses. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

"MCL 750.520d(1)(c) provides that a person is guilty of CSC III if they engage in sexual penetration with another person whom he or she knew or had reason to know was mentally incapable, mentally incapacitated, or physically helpless." *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005), citing MCL 750.520d(1)(c). MCL 750.520e(1)(c) provides that "[a] person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if . . . [t]he actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless." Relevant here, " '[p]hysically helpless' means that a person is unconscious, *asleep*, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m) (emphasis added). Neither party disputes that defendant engaged in sexual contact and sexual penetration with the victim. Therefore, whether defendant knew or had reason to know that the victim was physically helpless is the only element at issue here.

"[T]he elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013), citing *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). At trial, testimony from the victim and her friend established that the friend took the victim home, placed her in her bed where the victim fell asleep wearing clothes and that she was in her own bed, with her head near her headboard. At approximately 4:00 a.m. or 5:00 a.m., the victim testified that she woke up naked in her bed with her head at the foot of her bed, and defendant on

top of her. The victim testified that defendant was having sex with her, his lips were touching her breasts, and he used his hands to hold her wrists down to the bed. The victim's position in the bed is contrary to the position that the victim's friend testified she placed the victim in bed. Additionally, the victim's friend testified that the victim fell asleep in her dress and tights. Therefore, the evidence presented by the victim and her friend, if believed, was direct evidence that the victim was asleep when the penetration occurred. The victim made clear that she was asleep until she woke up with defendant on top of her. Given this testimony, a reasonable trier of fact could infer from the evidence that defendant knew or had reason to know that the victim was asleep, and thus, physically helpless under the statutory definition, when the sexual contact and penetration occurred. MCL 750.520d(1)(c); MCL 750.520e(1)(c); *Cox*, 268 Mich App at 443.

Defendant asserts on appeal that "significant evidence was presented" establishing that the victim lied. In contrast to the victim and her friend's testimony, defendant testified that defendant and the victim engaged in consensual sex. As previously stated and contrary to the victim's testimony, defendant testified that while sitting on the downstairs couch, " 'scrollin' through [his] phone," he heard the victim scream out; upon entering the victim's room, the victim told defendant that she was having back pain; he began to rub the victim's back to "comfort her"; the victim "pressed her body up against" defendant and began to grind "her butt on [his] front genitals"; the pair spooned and the victim continued to push her body up against defendant; the pair got excited and each individually removed their own clothing; the victim got on top of defendant, "rode" him until he ejaculated, and the pair rolled over and continued having sex; he did not hold the victim down because she was holding onto him; the pair had sex for another 20 minutes and the victim asked to continue having sex, but defendant declined; and, after the pair finished having sex, defendant returned to his bedroom while the victim showered. Defendant requests this Court believe his version of events and disregard the facts as set forth by the victim. However, it is well-settled that "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Further, for purposes of review, the evidence is viewed in the light most favorable to the prosecution. *Gaines*, 306 Mich App at 296. Therefore, based on the evidence presented below, when viewed in the light most favorable to the prosecution, there was sufficient evidence for a reasonable trier of fact to determine that the prosecutor proved the elements of third- and fourth-degree criminal sexual conduct beyond a reasonable doubt. *Solloway*, 316 Mich App at 180-181.

Beyond the conflicting testimony, defendant also argues on appeal that the victim's testimony was inherently incredible and contradictory. Again, we note that "[q]uestions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence." *People v Carll*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336272); slip op at 3, citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Our review of the record leads us to conclude that the State produced legally sufficient evidence, which if believed, would lead a rationale trier of fact to conclude that defendant was guilty of the charged offenses beyond a reasonable doubt. Accordingly, defendant is not entitled to relief on this issue.

## B. PROSECUTORIAL MISCONDUCT.

-3-

Defendant also argues on appeal that he was deprived of his right to a fair trial because the prosecution "repeatedly" engaged in prosecutorial misconduct. Specifically, defendant argues that the trial court had to interrupt the prosecutor on numerous occasions because he was being argumentative, leading, talking fast, and "screamin" at defendant.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Although a number of statements were objected to on the basis of the form of the question or as being argumentative or leading, defense counsel never requested curative instructions. Further, although defense counsel objected to the continued presence of the victim and Karen in the courtroom, counsel did not request a curative instruction.

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014) (citation and quotation marks omitted). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. (citation and quotation marks omitted). However,

> [u]npreserved issues are reviewed for plain error affecting substantial rights. Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, [this Court] cannot find error requiring reversal when a curative instruction could have alleviated any prejudicial effect. [*Bennett*, 290 Mich App at 475-476.]

"Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *Solloway*, 316 Mich App at 201 (citation omitted). "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "In reviewing prosecutorial misconduct challenges, this Court views the alleged prosecutorial misconduct in context." *Solloway*, 316 Mich App at 201 (citation omitted). "A defendant is entitled to a fair trial, not a perfect one." *Id*. "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Cooper*, 309 Mich App 74, 90; 867 NW2d 452 (2015), quoting *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation and quotation marks omitted; alteration in original). Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Marshall*, 493 Mich 1020, 1020; 829 NW2d 876 (2013).

Defendant argues that comments made by the prosecutor which caused the trial court to "admonish" the prosecutor for being argumentative and speaking too quickly denied him of a fair trial. When discussing defendant's relationship with the victim, the following exchange occurred:

*Prosecutor*: Even though you have this up and down relationship with her, you were gonna' [sic] go see what was wrong with her that night?

*Defendant*: I never said I didn't care.

*Prosecutor*: Well, I never asked if you did.

Without objection from defense counsel, the trial court recognized the argumentative nature of the prosecutor's statement. In asking defendant whether he cared about the victim, the prosecutor again commented, "I didn't ask you that, did I?" Again without objection from defense counsel, the trial court told the prosecutor to "stop being argumentative." Here, clearly the prosecutor's comments were somewhat argumentative. However, we note that on appeal, defendant does not articulate how he was prejudiced by these two remarks. Additionally, as to whether the prosecutor was asking questions or talking too quickly, defendant does not point this Court to evidence as to how the quickness with which the prosecutor asked questions prejudiced him.

Defendant also takes issue with the volume of the prosecutor's voice during cross-examination of defendant. Although trial counsel objected to the form of the question, it was the trial court that recognized that the prosecutor was "screamin" during cross-examination of defendant and admonished the prosecutor to refrain from raising his voice. The record reveals that by recognizing the prosecutor's tone of voice and allowing him to continue his questioning, the trial court's actions demonstrate that it did not perceive the prosecutor's tone of voice as an issue that required further addressing. Again, defendant has failed to demonstrate how he was prejudiced by the single instance of alleged "screamin" on the part of the prosecutor. (Defendant does not cite to other instances in the record where the prosecutor spoke with an elevated voice nor does he explain how the jury's verdict may have been affected by the prosecutor screaming. Rather, defendant makes conclusory statements that "[t]he prosecutor's improper conduct as well as that of his witnesses and the complainant, may well have prompted the jury to convict [him] thus depriving him of due process and a fair trial." In the absence of any evidence that defendant was denied a fair trial by the remarks, "screamin" and leading questions posed by the prosecutor, we hold that defendant is not entitled to relief on this issue.

Defendant additionally argues that he was denied a fair trial because the prosecutor defended the presence of the victim and Karen in the courtroom while they were crying, and even "support[ed] their misconduct." Under the Michigan Constitution, crime victims have "[t]he right to attend trial and all other court proceedings the accused has the right to attend." Const 1963, art 1, § 24. Additionally, the Crime Victim's Rights Act, MCL 780.761 provides:

The victim has the right to be present throughout the entire trial of the defendant, unless the victim is going to be called as a witness. If the victim is going to be called as a witness, the court may, for good cause shown, order the victim to be sequestered until the victim first testifies. *The victim shall not be sequestered after he or she first testifies*. [Emphasis added.]

In this case, the victim was the first person to testify. After the victim testified, she remained in the courtroom throughout the course of trial, including while defendant testified

regarding his version of events. During defendant's testimony, the trial court observed that the victim and her friend were crying in the back of the courtroom, excused the jury, and gave a short recess in order for the victim and Karen to "get themselves . . . together." Although defense counsel objected to the continued presence of the victim and her sister, Karen, in the courtroom while they were crying because it was "having an effect on the jury," the prosecutor argued that they had "every right to be in" the courtroom because their testimony was completed. Thereafter, the trial court instructed the victim and Karen to compose themselves and, if it got too emotional, for them to exit the courtroom to "make sure that there's no distraction. . . ."

Again, we are left with no evidence as to how the prosecutor's action of supporting the crime victim's constitutional right to be present in the courtroom has prejudiced defendant. Additionally, the record does not demonstrate that the prosecution "support[ed] their misconduct." Notably, it was on direct examination of defendant, with defense counsel, not the prosecutor, questioning defendant that the trial court had to stop the proceedings to talk to the victim and her friend. This Court has not been made aware of any statements in the record by the prosecutor that demonstrate the prosecutor was encouraging the crying of the victim and Karen or appealed to the jury to sympathize with the victim and Karen. See *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008), (stating that prosecution can argue that a witness should be believed, but cannot appeal to the jury to sympathize with the victim). Moreover, while defendant claims that the prosecutor was "defensive of their actions," the record reveals that the prosecutor was defensive of the victim's right to be in the courtroom. See Const 1963, art 1, § 24; MCL 780.761. In conclusion we add that the jurors were told by the trial court, and both the prosecutor and defense counsel, to not let sympathy or their emotions influence their decision. Accordingly, defendant is not entitled to relief on this issue.

Finally, in a brief statement in the standard of review portion of this issue in his brief, defendant contends that the prosecutor's rebuttal argument was "at issue here." Although defendant provides a brief synopsis of law dealing with attacks on defense counsel, defendant fails to identify any statements by the prosecutor that he takes issue with and does not explain how he was prejudiced other than by concluding that he was deprived of a fair trial. Therefore, defendant "has abandoned this issue by failing to provide any analysis in the text of his brief on appeal." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). We therefore conclude that defendant is not entitled to relief on this issue.

## C. SENTENCING SCORING

Defendant argues on appeal that his score under prior record variable (PRV) 7 should be reduced by 10 points because the crime used to score PRV 7, fourth-degree criminal sexual conduct, is a misdemeanor, not a felony. Such an argument presents this Court with a question of the application and interpretation of the sentencing guidelines. This Court reviews de novo the proper interpretation and application of the statutory sentencing guidelines, MCL 777.11 *et seq. People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a

question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (citation omitted).]

Where a defendant poses both an evidentiary challenge to the adequacy of the evidence supporting the trial court's score for an offense variable and a constitutional challenge under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015),

the evidentiary challenge must initially be entertained, because if it has merit and requires resentencing, the constitutional or *Lockridge* challenge becomes moot, as a defendant will receive the protections of *Lockridge* on resentencing. And if an evidentiary challenge does not succeed, then and only then should we entertain the constitutional challenge. [*People v Biddles*, 316 Mich App 148, 157-158; 896 NW2d 461 (2016).]

PRV 7 addresses subsequent or concurrent felony convictions. MCL 777.57(1). PRV 7 requires a score of 10 points if "[t]he offender has 1 subsequent or concurrent conviction[.]" The legislative sentencing guidelines, MCL 777.1 *et seq*., do not define the term "felony." However, the Code of Criminal Procedure, MCL 760.1 *et seq*., which the sentencing guidelines are a part of, defines "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(g). Our Supreme Court has recognized that the definitions within the Code of Criminal Procedure apply to the statutes in that code. *People v Smith*, 423 Mich 427, 444; 378 NW2d 384 (1985). Further, MCL 777.16y lists fourth-degree criminal sexual conduct as a class G felony.

Because the offense of fourth-degree criminal sexual conduct is "punishable by imprisonment for not more than 2 years," MCL 750.520e(2), and is listed as a class G felony under MCL 777.16y, it is a "felony" for purposes of PRV 7. Therefore, the trial court did not err in using defendant's conviction for fourth-degree criminal sexual conduct to score PRV 7.

Defendant also argues that offense variable (OV) 3 should have been assessed zero points because the victim did not suffer any physical injury.

OV 3 addresses physical injury to a victim. OV 3 requires a score of 10 points if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). The trial court must assess five points if "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). Finally, where "[n]o physical injury occurred to a victim," a score of zero points is required. MCL 777.33(1)(f). Notably, as used in 777.33, " 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

While defendant asserts that OV 3 should have been assessed zero points and the prosecutor argues that OV 3 should be assessed five points, the trial court did not err when it assessed 10 points for OV 3. Tina Marie Rogal, a registered nurse with the Wayne County Sexual Assault Forensic Examiner program, performed a physical examination of the victim and

identified five separate tears in the victim's vaginal area. Rogal further testified that she took the victim's medical history, performed a physical examination, and provided the victim with emergency contraception, and STI and HIV prophylactics. Therefore, a preponderance of the evidence supported the trial court's assessing 10 points to OV 3 because the evidence demonstrated that the victim sustained bodily injury requiring medical treatment. Because defendant's evidentiary challenge to the scoring of OV 3 is without merit, we proceed to whether defendant's constitutional challenge to the scoring of OV 3 is meritorious. See *Biddles*, 316 Mich App at 157-158.

Defendant argues that the trial court engaged in impermissible judicial fact-finding when it scored his sentencing guidelines. This issue was settled by our Supreme Court in *Lockridge* when they concluded that Michigan's legislative sentencing guidelines violated the Sixth Amendment to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score [OVs] that *mandatorily* increase the floor of the guidelines minimum sentence range. . . ." *Lockridge*, 498 Mich at 364. That is, the guidelines were unconstitutional because of "the combination of the two mandates of judicial fact-finding and adherence to the guidelines." *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). "As a remedy for the constitutional infirmity, [our Supreme Court] held that the guidelines were advisory only and that many defendants sentenced under the mandatory guidelines were entitled to *Crosby*[1] remands" at which the trial court would "determine whether it would have imposed a materially different sentence if it had been aware that the guidelines were not mandatory." *Id*. at 461-462. Although the Court rendered the guidelines advisory, it did not eliminate judicial fact-finding. See *Lockridge*, 498 Mich at 392 n 28.

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding. [*Biddles*, 316 Mich App at 158 (Emphasis in original.)]

Because "judicial fact-finding is proper, as long as the guidelines are advisory only," *id*. at 159, defendant's argument is without merit and he is not entitled to resentencing. Additionally, defendant's arguments that his four-year minimum sentence is not reasonable or proportionate because the trial court assessed points to OV 3 based on judicially-found facts are without merit because, as analyzed above, judicial fact-finding remains a "part of the process of calculating the guidelines. . . ." *Biddles*, 316 Mich App at 159. Additionally we reach our conclusions because: "A sentence that falls within the appropriate sentencing guidelines range is presumptively proportionate." *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011), citing *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Here, defendant's minimum sentencing guidelines range was 30 to 50 months, and he was sentenced to 48 months' imprisonment for his third-degree criminal sexual conduct conviction. Hence, defendant's minimum sentence is

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

within the appropriate guidelines sentence range, and thus a nondeparture sentence, we decline to review defendant's sentence for reasonableness, see *Lockridge*, 498 Mich at 392, and affirm defendant's sentence pursuant to MCL 769.34(10). Accordingly, defendant is not entitled to relief on this issue.

Affirmed.

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Jonathan Tukel