*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KATHRYN ELAINE PEOPLES,

Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 344372
Wayne Circuit Court
LC No. 17-009234-01 FH

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial conviction of aggravated assault, MCL 750.81a. Because a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt, and because we discern no error regarding the trial court's imposition of court costs, we affirm defendant's conviction and sentence.

## I. BACKGROUND

This case arose from the pepper spraying of Myron Pullin outside a supermarket in Detroit, Michigan. Pullin operates a jitney service, driving people to various destinations in exchange for a cash fee. Several days before the pepper-spraying incident, Pullin drove defendant to a funeral home. Pullin claimed that, after defendant left his car, $10 was missing. Later that evening, Pullin called defendant and told her that he would no longer provide her with driving services.

On September 18, 2017, defendant arrived at the supermarket in a car with two other women. Defendant approached Pullin, pointed her finger in his face, denied taking anything from him, and demanded that he never tell anyone that she took anything from him. Pullin said he then "knocked" defendant's hand away from his face, but defendant said Pullin slapped her. Defendant's glasses fell off of her face when Pullin knocked her hand away. When defendant reached down to pick up her glasses and stood up, she discharged pepper spray into Pullin's eyes and stated, "now what, now what?" Defendant reentered the car in which she arrived. Pullin reached into the car and tried to strike defendant, but missed.

Pullin went to the police mini-station located in the same shopping center as the supermarket. Officer Cynthia Gill instructed Pullin to rinse his face using the bathroom sink. Because Pullin complained that his eyes were still burning, Officer Gill washed Pullin's face with a water hose for 10 to 15 minutes. Pullin then sought additional medical treatment for his eye injury at the Kresge Eye Institute.

The jury acquitted defendant of felonious assault, MCL 750.82, but convicted her of aggravated assault, MCL 750.81a. The trial court sentenced defendant to one year of probation and imposed court costs under MCL 769.1k(1)(b)(*iii*). When defendant objected that she could only pay $20 per month toward costs and fees, the trial court reduced the court costs from $1,300 to $700 and ordered defendant to perform community service. The trial court specifically stated that court costs imposed in this case represented the expenses associated with defendant's prosecution, including salaries and benefits for related staff, goods and services for the operation of the trial court, and the operation and maintenance of the courthouse.

This appeal followed.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented in the trial court was insufficient to sustain her conviction of aggravated assault because the prosecutor failed to prove that she inflicted a "serious or aggravated injury" on Pullin. This Court reviews de novo defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Id.* Circumstantial evidence and reasonable inferences arising from that evidence can constitute sufficient proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

The aggravated-assault statute provides, in pertinent part:
[A] person who assaults an individual without a weapon and inflicts serious or aggravated injury upon that individual without intending to commit murder or to inflict great bodily harm less than murder is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both. [MCL 750.81a(1).]

On appeal, defendant challenges the sufficiency of the proofs with regard to only the occurrence of a "serious or aggravated injury."[1] While defendant acknowledges that it is

---

[1] We note in passing that the aggravated-assault statute references an assault "without a weapon." MCL 750.81a(1). This Court has recognized that pepper spray can qualify as a weapon for purposes of felonious-assault charges. See *People v Norris*, 236 Mich App 411, 415-416; 600 NW2d 658 (1999) (explaining that pepper spray, mixed with military tear gas, qualified

possible for pepper spray to cause a serious injury, she contends that Pullin suffered only temporary discomfort and nothing more. This Court has defined "serious or aggravated injury" as "substantial bodily [physical] injury or injury that necessitated immediate medical treatment or caused disfigurement, impairment of health or impairment of any bodily part." *People v Brown*, 97 Mich App 606, 611; 296 NW2d 121 (1980) (brackets in original). This Court has also stated that "the need to seek immediate medical attention is only one factor used in determining whether the element is established." *Id*. at 611.

The trial court's instructions to the jury comported with the definition of "serious or aggravated injury," in accordance with M Crim JI 17.6. As the trial court instructed the jury:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant tried to physically injure another person. Second, that the defendant intended to injure Myron Pullin, third, that the assault caused a serious or aggravated injury. A serious or aggravated injury is a physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health or impairment of the body – impairment of a part of the body.

Pullin testified at trial that his vision was blurry and that his face and eyes felt as though they were burning from the pepper spray. Pullin's eye and facial pain was initially so severe that he "went down to the ground." At first, Pullin experienced only blurry vision, but shortly thereafter, he experienced a complete loss of vision. When Pullin entered the mini-precinct, his eyes were red and tearing, and Officer Gill instructed Pullin to rinse his face with water. Despite doing so, Pullin's eyes continued to burn. Officer Gill assisted Pullin by washing his face with a water hose for 10 to 15 minutes, in an effort to flush the pepper spray out of his eyes. Pullin also sought medical treatment at the Kresge Eye Institute for his eye injury.

In *Norris*, 236 Mich App at 415-416, this Court explored whether pepper spray (mixed with military-grade tear gas) qualified as a "dangerous weapon" for purposes of felonious-assault charges, which required proof of a weapon "capable of causing death or serious injury." Reviewing case law from other jurisdictions, this Court noted that pepper spray, despite its "normally temporary" effects, can be disabling and can cause victims to suffer cognizable

---

as a dangerous weapon); see also *People v Savage*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 339417) (recognizing pepper spray as a "harmful chemical substance" for purposes of offense variables). Defendant clearly used pepper spray as a weapon when she sprayed the substance in Pullin's face. Yet, the absence of a weapon is not an element of the crime of aggravated assault that the prosecutor was required to prove beyond a reasonable doubt because a negative concept, such as being unarmed or acting without a weapon, is not a positive element of a crime. See *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979). Moreover, defendant has not argued on appeal that her not-guilty verdict on the felonious-assault charge was somehow inconsistent with her guilty verdict on the aggravated-assault charge. See *People v McKewen*, 326 Mich App 342; 926 NW2d 888 (2018), held in abeyance 924 NW2d 578 (2019).

injuries such as difficulty in breathing, burning sensations in the eyes or skin, and "temporary incapacitation." *Id*. at 416. The *Norris* Court determined that, even though victims exposed to pepper spray only temporarily experienced eye pain, skin irritation, and blurry vision, that "was sufficient to permit a reasonable jury to conclude that the . . . mixture [of tear gas and pepper spray] was a 'dangerous weapon' within the meaning of the . . . statute." *Id*. at 418-419.

More recently, in *Savage*, ___ Mich App at ___; slip op at 9, in the context of discussing the assessment of points for offense variables (OVs) 1 and 2, this Court specifically recognized pepper spray to be a "harmful chemical substance." Of significance is the analysis by this Court of caselaw from other jurisdictions and the federal courts, regarding the ability of pepper spray to cause serious bodily injury. Specifically, this Court, recognizing *United States v Mosley*, 635 F3d 859, 864 (CA 6, 2011), concurred that "the use of pepper spray, a device chosen for self-defense precisely because it injures and incapacitates attackers, presents a serious potential risk of physical injury to another when used offensively." *Savage*, ___ Mich App at ___; slip op at 10. This Court also found persuasive several decisions from other jurisdictions, including: *Weaver v State*, 325 Ga App 51, 53; 752 SE2d 128 (2013) (affirming a conviction for aggravated assault because spraying pepper spray into the face of an adult was likely to cause serious bodily injury), and *State v Harris*, 966 So 2d 773, 779 (La App, 2007) (concluding that pepper spray caused "serious bodily injury" even though the injuries were not permanent). *Savage*, ___ Mich App at ___; slip op at 10. Applying this case law and viewing the evidence in this case in the light most favorable to the prosecutor, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Pullin suffered a "serious or aggravated injury" as contemplated in MCL 750.81a.

Defendant argues, however, that immediate medical treatment is necessary before an injury can qualify as a serious or aggravated injury. Defendant contends that the assistance provided by Officer Gill in assisting defendant to flush his eyes with water merely qualified as first aid, but did not qualify as medical treatment. Defendant mistakenly conflates the definitional requirements of what comprises a serious or aggravating injury. As already noted, a "serious or aggravated injury" has been defined as "substantial bodily [physical] injury or injury that necessitated immediate medical treatment *or* caused disfigurement, impairment of health or impairment of any bodily part." *Brown*, 97 Mich App at 611 (emphasis added).

First, "use of the alternative term 'or' indicates a choice between two or more things." *People v Norwood*, 303 Mich App 466, 469; 843 NW2d 775 (2013). Thus, as long as the prosecutor demonstrated that the pepper spray caused an "impairment of any bodily part," the criteria to establish the existence of a "serious or aggravated injury" were satisfied, without the necessity of the victim procuring medical treatment. Second, caselaw has indicated that "the need to seek immediate medical attention is only one factor used in determining whether the element is established." *Brown*, 97 Mich App at 611. Third, Pullin testified that he did, in fact, seek treatment with the Kresge Eye Institute as a result of his eye injury. Defendant's argument that Pullin's efforts to procure medical treatment are insufficient to establish a serious or aggravated injury is contrary to case law and also fails to recognize the evidence adduced through Pullin's testimony.

Lastly, defendant alleges that the prosecutor erred by mischaracterizing the evidence presented at trial in her closing argument, erroneously suggesting that Pullin experienced ongoing problems or demonstrated a need for follow-up care. Defendant's claim of error constitutes an allegation of prosecutorial error.[2]

To preserve a claim of prosecutorial error for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Because the record does not show that defendant objected to the alleged instances of prosecutorial error, the issue is unpreserved. See *People v Cox*, 268 Mich App 440, 451; 709 NW2d 152 (2005).

We review unpreserved claims of prosecutorial error for plain error affecting substantial rights. *Carines*, 460 Mich at 763. When reviewing a claim of prosecutorial error, "we examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *Cox*, 268 Mich App at 451. Further, the propriety of a prosecutor's remarks depends on the particular facts of each case. Prosecutors are free to argue the evidence and any reasonable inferences arising from the evidence and need not confine argument to the blandest of all possible terms. *Id.* (cleaned up).

In support of his allegation of prosecutorial error, defendant recited this excerpt of the prosecutor's argument:

> In this case, immediate medical treatment can be the first aid rendered. But we also heard from Mr. Pullin that he sought further treatment, that he sought follow-up treatment after this event occurred, and that his eyes were blurry. He was unable to see, that his vision was impaired after this occurred.

"Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). The prosecutor did not argue facts not in evidence or mischaracterize the evidence when she stated that the first aid Officer Gill rendered to Pullin could qualify as immediate medical treatment. During trial, the prosecutor presented evidence that Officer Gill was a certified paramedic from 1988 to 2017, and Officer Gill testified that she administered first aid to Pullin by washing his face with a water hose for 10 to 15 minutes, in an attempt to flush the pepper spray out of his eyes. Pullin testified that he initially experienced blurry vision, but shortly thereafter, he experienced a complete loss of vision. Moreover, Pullin sought follow-up medical treatment at the Kresge Eye Institute.

---

[2] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (cleaned up).

The prosecutor's argument was based on the evidence and supports a reasonable inference that Pullin required immediate medical treatment. See *Watson*, 245 Mich App at 588. The fact that Pullin sought follow-up medical treatment supports a reasonable inference that he experienced ongoing problems or needed follow-up care. The prosecutor did not mischaracterize the evidence in her closing argument, and thus did not commit prosecutorial error.

## B. ASSESSMENT OF COURT COSTS

Finally, defendant takes issue with the trial court's imposition of court costs under MCL 769.1k(1)(b)(*iii*). She argues that the assessed costs amounted to an unconstitutional tax. Defendant concedes that when she was before the trial court, she did not challenge the assessment under MCL 769.1k(1)(b)(*iii*) as an unconstitutional tax. Therefore, defendant's argument is unpreserved, *People v Cameron*, 319 Mich App 215, 220 n 1; 900 NW2d 658 (2017), and we review it for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 752-753.

Defendant first takes issue broadly with this Court's decision in *Cameron*, arguing that the Court incorrectly concluded that MCL 769.1k(1)(b)(*iii*) satisfied Michigan's Distinct Statement Clause, Const 1963, art 4, § 32, and the Separation of Powers Clause, Const 1963, art 3, § 2. Regardless of the merits of defendant's position, *Cameron* is a published decision of this Court and we are bound to follow its holding.

Next, more specifically, defendant challenges whether the assessment of court costs was proportionate to the necessary costs of the related services. "MCL 769.1k(1)(b)(*iii*) requires a relationship between the costs imposed and the services they support by authorizing only costs reasonably related to the actual costs incurred by the trial court." *Cameron*, 319 Mich App at 225 (cleaned up). Therefore, a trial court "must establish a factual basis for the costs imposed pursuant to MCL 769.1k(1)(b)(*iii*)." *Id.* (cleaned up).

Here, the trial court specifically stated that defendant's court costs represented the expenses associated with her prosecution, including salaries and benefits for related staff, goods and services for the operation of the court, and operation and maintenance of the courthouse. In addition, the trial court informed defendant that her court costs were assessed without regard to whether her criminal conviction was a felony or misdemeanor, which tends to establish that the trial court imposed costs reasonably related to the actual costs of criminal matters incurred by the trial court. Thus, the trial court established a factual basis for defendant's court costs imposed under MCL 769.1k(1)(b)(*iii*).

Defendant also argues that her court costs are unconstitutional because she did not benefit from the trial court's services. As the *Cameron* Court held, however, a defendant need not benefit from the trial court's services for the costs imposed to be constitutional. "[A]ny service rendered by the trial court's role in the prosecution of the defendant benefits primarily the public, not defendant." *Id.* at 227. While the public is the main benefactor of the trial court's service in prosecuting the defendant, the defendant can still be assessed the costs of that public benefit. *Id.* at 227-228.

Lastly, defendant argues that a tax imposed without voter approval violates Michigan's Headlee Amendment, Const 1963, art 9, § 31. Defendant, however, does not argue or specify how the Headlee Amendment supports her claim that the trial court's tax assessment under MCL 769.1k(1)(b)(*iii*) is unconstitutional. Defendant cites *Bolt v City of Lansing*, 459 Mich 152, 159; 587 NW2d 264 (1998), to discuss distinctions between user fees and taxes, and concludes that MCL 769.1k is a tax. This discussion by defendant is unavailing given that this Court in *Cameron* established that the trial court's assessment of court costs under MCL 769.1k(1)(b)(*iii*) constitutes a tax, not a fee, but is nonetheless constitutional. Defendant does not explain how *Bolt* is relevant or supports her claim, and we are likewise unable to see how *Bolt* advances any claim by defendant.

Affirmed.


/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle