*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENEKO ALFRED CHILDS,

        Defendant-Appellant.

UNPUBLISHED
January 25, 2024

No. 362758
Wayne Circuit Court
LC No. 21-002571-01-FC

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

On February 21, 2021, defendant, Deneko Alfred Childs, shot and killed Brian Chapman outside a liquor store in Highland Park. The incident was captured on surveillance video. At trial, defendant took the witness stand and testified that he shot Chapman in self-defense, but the jury chose to reject that claim and convict defendant of second-degree murder, MCL 750.317, felon in possession of a firearm (felon-in-possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant to serve 35 to 50 years' imprisonment for second-degree murder, 5 to 15 years' imprisonment for both felon-in-possession and carrying a concealed weapon, and consecutive terms of five years' imprisonment for each felony-firearm, second offense, conviction. On appeal, defendant challenges his convictions, but not his sentences, on three grounds. We affirm.

## I. FACTUAL BACKGROUND

On February 21, 2021, defendant walked into a liquor store in Highland Park where Brian Chapman, the victim, was socializing. Chapman, who had known defendant for many years, had a friendly interaction with defendant while inside the store and then followed defendant outside. Chapman continued talking to defendant while defendant was sitting inside his vehicle, and as they talked, the conversation became much more intense. Chapman pulled up his shirt and announced to defendant that he had a gun. Then Chapman walked over to a nearby sidewalk and performed a dance. While Chapman was dancing, defendant grabbed his gun and got out of his vehicle. That

-1-

prompted Chapman to walk toward defendant, and defendant shot Chapman to death. At no point did Chapman appear to grab or reach for his gun.

During opening statement, the prosecutor played the surveillance video of the shooting and described for the jurors what was depicted in the video. Defense counsel objected to the prosecutor playing the video because it had not yet been admitted into evidence, but the trial court ruled that the prosecutor could play the video because it was likely to be admitted during the trial and defense counsel had no objection to admitting the video into evidence.

During the prosecution's case-in-chief and in reliance upon a pretrial stipulation, Detective Mitchell Heaney, a police detective for the city of Ecorse, testified that he knew defendant because Highland Park was a small town and he had had several prior interactions with defendant. For that reason, Detective Heaney told the jury that he was able to identify defendant as the shooter in the surveillance video.

After the prosecution completed its case-in-chief, defendant chose to testify in his defense. He explained to the jury that he shot Chapman in self-defense because he feared for his life when Chapman threatened him with a gun. The trial court gave the jury instructions on self-defense, but the jury rejected defendant's claim of self-defense and convicted him of second-degree murder for the shooting of Chapman. After the trial court imposed sentences on the five counts of conviction, including second-degree murder and four firearms offenses, defendant filed this appeal of right.

## II. LEGAL ANALYSIS

Defendant contests his convictions, but not his sentences, on three grounds. First, he argues that the prosecutor engaged in misconduct in opening statement by playing the surveillance video of the shooting and offering a narrative describing the events leading to the shooting. Second, he contends that Detective Heaney improperly referred to numerous contacts he had with defendant before the night of the shooting. Third, he challenges the sufficiency of the evidence on the claim of self-defense. We shall address these three issues in turn.

## A. THE PROSECUTOR'S OPENING STATEMENT

Defendant criticizes the prosecutor for playing the surveillance video for the jurors during opening statement and describing what the video depicted. The prosecutor first played the video without any comment or interruption, and then the prosecutor offered comments about the events depicted in the video. As the prosecutor was making comments about the video, defense counsel objected to the playing of the video, stating "[i]t's not in evidence." The trial court overruled that objection, noting that "I don't think there's any dispute as to the video coming in[.]" And, indeed, the entire video later was admitted into evidence without any objection. Defense counsel presented no objection to the prosecutor's comments about the contents of the video. Thus, the objection to the playing of the surveillance video during opening statement preserved that issue for review, but the absence of any objection to the prosecutor's statements about the video dictates that that issue is not preserved for review. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) ("To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction.") (citation omitted).

"We review de novo [preserved] claims of prosecutorial misconduct to determine whether [a] defendant was denied a fair and impartial trial." *People v Cox*, 268 Mich App 440, 450-451; 709 NW2d 152 (2005). "In reviewing prosecutorial misconduct challenges, this Court views the alleged prosecutorial misconduct in context." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). To establish plain error, a defendant must show (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is justified only if "plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

The prosecutor's opening statement began with the playing of the surveillance video, which was ultimately admitted during the prosecution's case-in-chief without objection. In addressing a complaint that "the prosecutor committed misconduct by playing the audio exhibit of defendant's recorded telephone conversation during the prosecutor's opening statement[,]" we concluded that prosecutorial misconduct did not occur because "the trial court later admitted that recording during trial" and the prosecutor was simply providing "the facts that [would] be proved at trial[.]" *People v Alexander*, unpublished per curiam opinion of the Court of Appeals, issued March 6, 2014 (Docket No. 311437), p 7. Although we are not bound by an unpublished decision of this Court, *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), we find that the approach taken in *Alexander* is persuasive, so we choose to apply it here. Hence, because the surveillance video was admitted at trial, the prosecutor did not commit misconduct by playing the video as part of the prosecution's opening statement.

With respect to the prosecutor's comments in opening statement about the contents of the surveillance video, our review is limited to a search for plain error. "During opening statements, a prosecutor may state the facts that will be proved at trial" and "summarize what he or she thinks the evidence will show." *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014) (quotation marks and citation omitted). Summaries of what the evidence will show are permissible during opening statement so long as the prosecutor does not volunteer an opinion as to the defendant's guilt. *Id*. In this case, the prosecutor's comments were permissible because they summarized the surveillance video and stated what the prosecutor believed the video showed without offering any opinion as to defendant's guilt. See *id*. at 65. The prosecutor told the jury:

> You will see that after [the victim] walks away from the van[,] . . . as he's backing away he lifts up his jacket where he's got that gun tucked in a holster and he says, "[b]ig 40 you know what it is." It's a 40 caliber pistol . . . that was ultimately recovered that was his.
>
> After he does that, he puts his jacket back down and he walks back over to the sidewalk away from the van and with only a cell phone in his hand he starts to kind of dance on the sidewalk joking around again. You'll see that at that point, [defendant] gets out of the van with a pistol and that he points it at [the victim], and that when he does that [the victim] walks toward him again with only a cell phone in his hand and then at that point [defendant] fires three shots, closeup, including one as [the victim] is turning and you will see that [the victim] continued to turn

and walked away from the van back toward the front door of the store and you will see that [defendant] fires three more shots . . . .

* * *

You will not see any video footage that shows that [the victim] ever took that gun out and held it in his hands in [defendant's] presence that night.

The prosecutor presented a theory of the case by describing what was depicted in the surveillance video. This was permissible because prosecutors are allowed to use opening statement to state the facts that will be proven at trial. *Id*. Thus, the trial record reveals no error at all, much less plain error that affected defendant's substantial rights, in the prosecutor's opening statement.

## B. DETECTIVE HEANEY'S TESTIMONY

Defendant argues that Detective Heaney's testimony that he knew defendant because they had had previous interactions unfairly prejudiced defendant and deprived him of a fair trial because the statement portrayed defendant as a criminal who was well-known to the police. That issue was not preserved because defense counsel did not object to Detective Heaney's testimony at trial. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). An unpreserved issue is reviewed for plain error affecting substantial rights. *Id*.

At a pretrial hearing on July 21, 2021, the parties stipulated that Detective Heaney could testify that he recognized defendant based on Highland Park being a small community where a lot of people know each other, but Detective Heaney could not refer to defendant's previous criminal conduct. At trial, Detective Heaney testified as follows:

*Q*. And the individual depicted in exhibits ten and 11, do you recognize him?

*A*. Yes, I do.

*Q*. When you were on the scene actually back on February 21st of 2021, did you recognize him at that point?

*A*. I did.

*Q*. And who is that individual?

*A*. I recognized him as Deneko Childs.

*Q*. And how did you recognize him?

*A*. Well, Highland Park is a very small city. It's less than three square miles. It's probably 9,000 people in the city. Working there over the years you get to know everybody in the city and I've had multiple interactions specifically with [defendant].

-4-

In conformity with the pretrial stipulation, Detective Heaney did not testify that he knew defendant based on defendant's prior criminal history. But Detective Heaney went beyond merely basing his recognition of defendant on the fact that Highland Park is a small community. Detective Heaney added that he had "multiple interactions specifically with [defendant]." We conclude that Detective Heaney's testimony conformed to the pretrial stipulation because Detective Heaney did not say that his prior interactions with defendant involved defendant's criminal conduct. Further, Detective Heaney's statement that he had had multiple interactions with defendant was reasonable to establish Detective Heaney's ability to identify defendant. Simply working in a community of 9,000 people, without more, is insufficient to persuasively establish someone's ability to positively identify a person. Thus, Detective Heaney provided appropriate context to reveal the significance of his statement that "Highland Park is a very small city."

## C. SUFFICIENCY OF THE EVIDENCE REFUTING SELF-DEFENSE

Finally, defendant argues the prosecution failed to prove, beyond a reasonable doubt, that defendant did not act in self-defense when he shot Chapman. Challenges to the sufficiency of the evidence are reviewed de novo. See *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). When reviewing the sufficiency of the evidence, we must "view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

"In a criminal proceeding, the defendant has a constitutional right to have the prosecution prove his or her guilt beyond a reasonable doubt." *People v Likine*, 492 Mich 367, 407; 823 NW2d 50 (2012). Defendant was charged with first-degree murder, but he was convicted by the jury of second-degree murder. "The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Wafer*, 509 Mich 31, 40; 983 NW2d 315 (2022) (quotation marks and citation omitted).

Defendant claims there was insufficient evidence to convict him of second-degree murder because he was acting in self-defense. "With the enactment of the Self–Defense Act (SDA), MCL 780.971 *et seq*., the Legislature codified the circumstances in which a person may use deadly force in self-defense . . . without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010).

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [*People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014), quoting MCL 780.971(1).]

"[O]nce a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must bear "the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (citation omitted).

Here, defendant testified that he was afraid for his life when he shot Chapman because he had seen Chapman act violently and Chapman was threatening him by showing defendant his gun. This satisfied defendant's burden to produce some evidence from which a jury could conclude that defendant acted in self-defense. *Id*.

The next inquiry is whether the jury properly found the prosecution disproved defendant's self-defense theory beyond a reasonable doubt. *Dupree*, 486 Mich at 710. Self-defense justifies the killing of another person when the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm and it is necessary to use deadly force to prevent such harm to himself. *Stevens*, 306 Mich App at 630. "The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403. In order to claim the defense of self-defense, the defendant's actions taken to defend himself or herself must be reasonable. *Dupree*, 486 Mich at 707.

The circumstances in this case that led up to the shooting were such that a rational trier of fact could find beyond a reasonable doubt that defendant was not justified in shooting Chapman. When defendant came into the liquor store, Chapman gave defendant a hug and wanted his picture taken with defendant. Chapman seemed intoxicated, but his interactions with defendant inside the store were peaceful and not aggressive. Robert Merdau, the owner of the liquor store where the shooting occurred, testified that defendant and Chapman were talking normally to each other inside the store, and Merdau opined that there was no hostility. Defendant stated Chapman was annoying him inside the store, but Chapman did not threaten defendant then. When defendant left the store, Chapman followed him.

After they left the store, defendant and Chapman kept talking. The conversation appeared normal, and neither person exhibited any violent behavior. At one point, Chapman raised his shirt and announced that he had a gun. But Chapman did not appear to remove the gun from its holster. When defendant stepped out of his vehicle with a gun in his hand, Chapman was on the sidewalk doing a dance and not threatening defendant. After defendant emerged from his vehicle, Chapman walked toward defendant with his hands empty. Defendant shot Chapman at that point. Defendant fired several shots at Chapman, paused, and then fired again while Chapman was retreating to the sidewalk. Chapman seemed to be turning to look back at defendant when defendant fired the final shots at Chapman.

The surveillance video reveals that defendant was the aggressor while Chapman displayed no aggressive behavior. Thus, a rational trier of fact could have found Chapman's actions outside the store were not sufficient to create in defendant an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death or great bodily harm. This is especially true because defendant admitted he had the ability to drive away from Chapman, making defendant's use of deadly force unreasonable. *Dupree*, 486 Mich at 707 (holding that the steps the defendant takes to defend himself must be reasonable in order to claim the defense of self-defense). Instead

of driving away, defendant grabbed his gun and stepped out of his vehicle, prompting Chapman to walk toward him, and then defendant coolly shot the victim. Defendant was not cowering behind his van door or trying to avoid Chapman. Rather, defendant assumed a wide stance in front of his van door, waited for Chapman to get within a few feet of him, and methodically raised his gun and shot Chapman several times in the chest even though Chapman's hands were open and empty as he walked toward defendant. Significantly, the surveillance video offers no suggestion whatsoever that Chapman had his gun in his hand at any point during his encounter with defendant.

After the shooting, defendant fled the scene. In Michigan, evidence of flight is admissible to support an inference of defendant's consciousness of guilt. *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008). Thus, the jury was allowed to infer defendant was aware of his guilt. In addition, despite defendant's testimony to the contrary, Marlita Chapman-Sims, the sister of the victim, testified Chapman was not a bully or a violent person and she was not aware of him being involved in any specific act of violence. Defendant asserted that he was afraid of Chapman in part because Chapman was in a gang called the Demons. But Chapman-Sims had not heard of a gang called the Demons, and she was not aware of Chapman being involved in a gang. Detective Paul Thomas, a Highland Park police detective, also had not heard of a gang called the Demons despite his 30 years of local law enforcement experience. Based on all that, a reasonable juror could have concluded that Chapman was not aggressive or violent and he was not affiliated with a gang called the Demons, making it less likely defendant had a reasonable and honest fear of imminent death or great bodily injury. Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense when he shot Chapman.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates