*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 21, 2024

Plaintiff-Appellee,

v

No. 362641
Marquette Circuit Court
LC No. 19-057786-FC

MICHAEL JOSHUA LAMB,

Defendant-Appellant.

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

This case considers the impact of jury selection and prosecutorial commentary on a criminal defendant's right to a fair trial. Defendant, Michael Joshua Lamb, was convicted by a jury of two counts of third-degree criminal sexual conduct of an incapacitated victim (CSC-III), MCL 750.520d(1)(c). On appeal, Lamb claims that he was denied his right to a fair and impartial jury because the trial court improperly failed to excuse certain biased prospective jurors for cause. Lamb also contends that prejudicial remarks by the prosecutor during closing arguments about knowledge of Lamb's guilt and the complainant's credibility deprived him of a fair trial. Underlying each of Lamb's arguments are claims of ineffective assistance of counsel. Lamb has not identified any errors warranting reversal, so we affirm.

## I. BACKGROUND

In November 2018, the complainant, SB, was alone and feeling depressed. Wanting to leave her troubles behind, SB contacted her friend, Max Valentia, and Lamb to purchase alcohol for her. After Valentia and Lamb returned with the alcohol, the trio began drinking in SB's basement. Throughout the night, SB drank a substantial amount of alcohol and smoked marijuana. When Valentia received a phone call from his girlfriend, he went upstairs, leaving Lamb and SB alone. As a result of the combination of alcohol, marijuana, and prescription medications she had taken earlier in the day, SB began to feel drowsy and laid down on the couch to sleep. When SB woke up, she and Lamb were not wearing any clothes, and Lamb was performing oral sex on her.

While Valentia was upstairs, he noticed that the music being played earlier had stopped and went to investigate. Valentia saw Lamb having sexual intercourse with SB, who did not appear

-1-

to be awake. Valentia claimed that he pulled Lamb off of SB and ran back upstairs to grab his phone. SB then woke up to find Lamb on top of her. Lamb admitted to police that he had sexual intercourse with SB but claimed that it was consensual. During a separate police interview, however, Lamb stated that he noticed SB was unconscious, but continued to have sexual intercourse with her for two to three minutes. As a result, Lamb was charged with two counts of first-degree criminal sexual conduct (CSC-I), resulting in injury to an incapacitated victim, MCL 750.520b(1)(g).

During voir dire, the parties questioned numerous jurors about their biases and perceptions of sexual assault as well as their understanding of the evidentiary burden of proof. One juror, PP, indicated that she would struggle to find a criminal defendant not guilty if the evidence showed beyond a reasonable doubt that he had engaged in sexual contact with an individual who had passed out. Believing PP could not be impartial, the prosecutor moved to dismiss her for cause, but the trial court denied the request. Another juror, GF, arguably suggested that he could have difficulty being fair in a case involving CSC. Additionally, PP, GF, and two other jurors, ALF and JM, shared their belief that a criminal defendant should have the burden to prove his innocence. Defense counsel did not move to remove these jurors for their comments, and both parties ultimately were satisfied with the empaneled jury.

Throughout trial, the parties presented conflicting theories of what transpired between SB and Lamb. Thus, the primary issue before the jury was one of credibility. SB and Valentia both maintained that SB was passed out while Lamb engaged in sexual contact with her. By contrast, Lamb told police that he believed the sexual contact was consensual. During closing arguments, the prosecutor emphasized that SB's testimony was consistent and credible, and argued that she was not lying. At one point, the prosecutor stated that he knew Lamb "did this," and defense counsel objected, claiming that the prosecutor was not allowed to suggest that he knew Lamb committed the crime. The trial court sustained the objection and instructed the jury that the court and lawyers were not the fact-finders. The jury ultimately convicted Lamb of two counts of the lessor offense of CSC-III, and the trial court sentenced Lamb to concurrent terms of 3 to 15 years' imprisonment for each count. This appeal followed.

## II. JURY SELECTION

Lamb argues that he was denied his right to a fair and impartial jury because the trial court failed to excuse partial prospective jurors. He also contends that his trial counsel was ineffective for failing to challenge these jurors for cause or use peremptory challenges to remove them.

## A. IMPARTIAL JURORS

Generally, a "defendant must exhaust his peremptory challenges to preserve a jury selection question." *People v Jendrzejewski*, 455 Mich 495, 514 n 19; 566 NW2d 530 (1997). An argument may still be preserved, however, if "a party refuses to express satisfaction with the jury empaneled," *id*., or if "further objection would have been futile," *People v Stevens*, 498 Mich 162, 180 n 6; 869 NW2d 233 (2015). Although Lamb did not exhaust his peremptory challenges, during voir dire, the prosecutor moved to dismiss PP for cause, arguing that she could not be impartial towards Lamb. The trial court, however, denied the prosecutor's request. Because the prosecutor did not express satisfaction with PP and any further objection by defense counsel would have been

futile, Lamb's argument as to PP is preserved. But because Lamb did not exhaust his peremptory challenges and no challenges were made regarding jurors GF, ALF, and JM, his arguments challenging their impartiality are unpreserved.

We review "a trial court's rulings on challenges for cause" for an abuse of discretion. *People v Williams*, 241 Mich App 519, 520; 616 NW2d 710 (2000). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 259; 749 NW2d 272 (2008). But we review "unpreserved claim[s] for plain error affecting defendant's substantial rights." *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019) (cleaned up). This third requirement "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 54 (cleaned up). "Reversal will only be warranted when the plain error leads to the conviction of an actually innocent defendant or when an error affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (cleaned up). We review the proper interpretation and application of court rules de novo. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). De novo review means that we review an issue independently, without any required deference to the courts below. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

Lamb's arguments about jury selection implicate his right to a fair and impartial trial, as guaranteed by the Sixth Amendment of the United States Constitution and article 1, § 20 of the Michigan Constitution. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). This includes the right to have "a panel of impartial indifferent jurors." *Jendrzejewski*, 455 Mich at 502 (cleaned up). Unless shown otherwise, jurors are presumed to be impartial. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "A trial court ensures that a jury is impartial by conducting voir dire and removing biased jurors before impaneling the jury[.]" *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *Id*. (cleaned up). During voir dire, a prospective juror may be challenged for cause if the person "is biased for or against a party or attorney," "shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be[.]" MCR 2.511(E)(2) and (3). If "the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." MCR 6.412(D)(2). Where a "defendant maintains that the process did not result in an impartial jury, defendant has the burden to show that a particular juror was not impartial or, at the very least, that the juror's impartiality was in reasonable doubt." *Haynes*, 338 Mich App at 411. See also *Miller*, 482 Mich at 550.

Lamb first argues that the trial court erred by denying the prosecutor's motion to excuse PP for cause. This argument centers on the following exchange during voir dire:

> [*Prosecutor*]: Is there anybody that feels like for any reason that I haven't touched on, the Judge hasn't touched on, that you feel you cannot be fair and impartial?

*Prospective Juror* [*PP*]: If she's passed out (inaudible), I don't think that I can.

[*Prosecutor*]: Okay. You don't think you can be fair and impartial then, hearing about what this would be? Okay. And this is [PP]? Your Honor, I'm gonna (sic) ask the Court for cause to excuse [PP].

*The Court*: Just—just a question in this regard, ma'am. As I understand it, well I—I'm certainly not arguing with your point because our question here is simply how you feel about these matters and I think you've expressed that. Is it— do I understand clearly that you think that—that a person who is voluntarily drinking to excess to a point of even one who was passed out so to speak, whatever that may mean, first could be vulnerable to be victimized in some way. And secondly, if they were victimized, it's their fault?

[*PP*]: No. It shouldn't have happened. It shouldn't happen. I don't care if she was drinking or not.

*The Court*: All right. I don't quite follow on your response to [the prosecutor's] question then. I—I'm not quite understanding if—if you—

[*PP*]: I guess I can't be—

*The Court*: If you're saying that such a person, even one who is allowing voluntarily, shall we say, susceptible to being a victim of a crime none the less [sic], it's—it's the fault of the perpetrator of the crime?

[*PP*]: Yeah.

*The Court*: Is that what you understood the answers to be, [prosecutor]? If so, the challenge for cause is denied.

[*Prosecutor*]: Well, so—if I could explore that with you a little more. Now, I have recently gotten a hearing aid, so if I miss—misunderstood you, I apologize.

* * *

[*Prosecutor*]: What I asked—do you feel there's any reason you cannot be impartial? You said if she—I thought you said if she put herself in that situation, you can't be. Did I misunderstand you?

[*PP*]: Yes, you did.

[*Prosecutor*]: Okay. I apologize. So, if—if you hear that the alleged victim in this case drank until she was passed out and vulnerable, would you still be able to—to find a Defendant guilty *if you believe there was proof beyond a reasonable doubt* that he had sex with her while she was in that condition?

[*PP*]: I don't—if she—put a blanket on her, let her go to sleep. I don't—I don't—I just can't say that I could.

[*Prosecutor*]: What is it that you can't say you could do?

[*PP*]: I don't know that I could find him not guilty.

[*Prosecutor*]: Okay. So, I'm miss reading [sic] it. You—you don't feel that you could even consider that he's not guilty.

[*PP*]: No.

[*Prosecutor*]: I understand now. Well, in that case, your Honor, I still think there would be grounds for cause. We need a fair and impartial jury, so—

*The Court*: I'm—I'm going to deny that motion for cause, or the request for cause. [Emphasis added.]

Lamb contends that PP's comments prove that she would be unable to render a just verdict because "even if she had reasonable doubt about Mr. Lamb's guilt . . . she would have a difficult time finding him not guilty if the facts of the case made her feel uncomfortable with his actions." Read in context, however, Lamb is misconstruing the exchange between PP, the prosecutor, and the trial court. To prove Lamb was guilty of CSC-III, the prosecutor had to admit evidence showing, beyond a reasonable doubt, that Lamb engaged in sexual penetration with another person who he knew was "mentally incapable, mentally incapacitated, or physically helpless." MCL 750.520d(1)(c); *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005). The prosecutor asked PP whether she would be able to find a defendant guilty even if the victim voluntarily created the circumstances that made her vulnerable to CSC. PP's statements conveyed that any alleged fault by the victim would not deter her from rendering a guilty verdict if the prosecutor met his evidentiary burden. PP's comments do not demonstrate a bias against Lamb; rather, they are logically consistent with the elements of the crime and the prosecutor's burden of proof. Accordingly, the trial court did not err by denying the prosecutor's motion to excuse PP for cause.

Lamb also argues that the trial court erred by not excusing prospective juror GF because this juror expressed concerning views about his ability to remain impartial. Lamb focuses on the following exchange involving GF:

[*Prosecutor*]: And that's why I was going into that with so many details. You know, I mean—I'll be honest I have family members that in this type of case their first reaction is to go well, why—why'd she let herself become vulnerable. And I think that's just because as human beings we tend to judge others all the time; right? But then when I ask a follow up, well even if a person becomes vulnerable does that mean the person that did something gets away with it? And they're like no, absolutely not. So, I think the key question is for your situation—your feelings, they're in line with the law. But what if I don't present enough evidence to you that you believe the Defendant is guilty beyond a reasonable doubt? Do you feel you're still going to want to convict him anyway? Or would you still say not guilty?

[*GF*]: Oh, I don't think would—I still would convict him.

[*Prosecutor*]: Okay.

[*GF*]: If there was a reasonable doubt.

[*Prosecutor*]: Okay. So, you'd still—even how you feel, you'd still be able to be neutral in the case.

[*GF*]: I think so.

It is not readily apparent from the transcript what GF meant in his initial response to the prosecutor's question. On the one hand, the statement could be read as: "I don't think I still would convict him." On the other hand, the statement could be read as: "I still would convict him." This lack of clarity in the transcript shows that any alleged bias held by GF was not clear or obvious, so Lamb cannot establish plain error. And the prosecutor's follow-up question clarifying that GF would remain neutral suggests that GF was more likely stating that he would *not* convict if there was reasonable doubt, even though GF had previously expressed difficulty understanding "why a man would do anything like this." Because it was not clear or obvious that any legitimate basis existed to challenge GF's impartiality, the trial court did not plainly err by failing to removing him for cause. See *People v Lee*, 212 Mich App 228, 249; 537 NW2d 233 (1995).

Lamb also challenges remarks made by PP, GF, ALF and AM, about the burden of proof in this exchange:

[*Defense Counsel*]: [GF]. You said—or you raised your hand, you'd want me to prove, or the Defendant to prove something. How many of us agree with [GF]? Okay. [ALF]; right?

[*ALF*]: Yes.

[*Defense Counsel*]: [PP], where are you at on this? You want me to prove something?

[*PP*]: Yeah.

[*Defense Counsel*]: Okay. Fair enough. Thank you for your honesty. Brutal honesty, that's what I like. [AM], where are you at?

[*AM*]: Prove it; yeah. Prove him innocent; prove him guilty.

Although the jurors' comments demonstrated a misunderstanding of the burden of proof,[1] defense counsel followed that exchange by telling prospective jurors that "[t]he law says the

---

[1] The law is complicated, so it's no surprise that prospective jurors often hold mistaken views on the law. For that reason, we entrust trial courts to accurately instruct the jury on the law, including

-6-

Defendant doesn't have to prove anything." The trial court, both during voir dire and the final jury instructions, also properly instructed the jurors on the evidentiary burden of proof. These instructions made it clear to jurors that Lamb was presumed innocent until proven guilty and that the burden of proof remained solely with the prosecution. Because the trial court's instructions clarified any confusion about the evidentiary burden and jurors are presumed to follow the trial court's instructions, see *People v Henry*, 315 Mich App 130, 150; 889 NW2d 1 (2016), Lamb cannot establish plain error affecting his substantial rights. Accordingly, Lamb is not entitled to relief.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Lamb also contends that he was denied the effective assistance of counsel because his trial counsel failed to request that the trial court excuse PP, GF, ALF, and AM for cause or exercise his peremptory challenges to remove them.

A claim of ineffective assistance of counsel is preserved by moving for a new trial or an evidentiary hearing. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Because Lamb did not move for a new trial or an evidentiary hearing, his argument is unpreserved. See *id*. Our review of an unpreserved claim of ineffective assistance of counsel is limited to errors apparent on the record. *Unger*, 278 Mich App at 253.

The United States and Michigan Constitutions protect a defendant's right to a fair trial. US Const, Am VI; Const 1963, art 1, § 17. "This right includes the right to the effective assistance of counsel." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). To succeed on a claim of ineffective assistance of counsel, "a defendant must establish that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (cleaned up). "Counsel's performance is strongly presumed to have been born from a sound trial strategy." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020) (cleaned up). "If counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (cleaned up).

Decisions regarding jury selection are generally matters of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). "Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258. Because we "cannot see the jurors or listen to their answers to voir dire questions[,]" we are "disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Id*. (cleaned up). Further, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As discussed

---

on the proper burden of proof. Incorrectly answering a legal question from an attorney during voir dire does not automatically render a prospective juror removable for cause, nor does it necessarily "show[] a state of mind that will prevent the person from rendering a just verdict[.] MCR 2.511(E)(2).

earlier, the trial court did not err in permitting PP, GF, ALF, and AM to serve on the jury. Defense counsel cannot be deemed ineffective for failing to request that they be excused for cause because such a request would have been meritless. See *Ericksen*, 288 Mich App at 201. Nor can Lamb establish that defense counsel performed deficiently by failing to use peremptory challenges to remove them. As a result, Lamb has not shown that he was denied the effective assistance of counsel and is not entitled to relief on these grounds.

### III. PROSECUTORIAL MISCONDUCT

Lamb next contends that he was deprived of a fair trial because, during closing arguments, the prosecutor improperly made comments about his knowledge of Lamb's guilt and vouched for SB's credibility. Lamb also asserts that his trial counsel was ineffective for challenging the prosecutor's comments regarding SB.

### A. PROSECUTOR'S COMMENTS

"[A] defendant must contemporaneously object and request a curative instruction to preserve an issue of misconduct for appellate review." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (cleaned up). Lamb objected to the prosecutor's comment about his knowledge of Lamb's guilt, thereby preserving his argument. See *id*. But Lamb failed to object the prosecutor's comments about SB's credibility. Accordingly, this argument is unpreserved. See *id*. We review preserved allegations of prosecutorial misconduct de novo "to determine whether the defendant was denied a fair and impartial trial." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). Unpreserved arguments are "reviewed for plain error affecting substantial rights." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425; 884 NW2d 297 (2015). There is no "error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id*. (cleaned up).

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a "case-by-case basis," and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Jackson*, 313 Mich App at 426. "Generally, prosecutors are accorded great latitude regarding their arguments and conduct," and are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of their case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (cleaned up). But "prosecutors should not . . . express their personal opinion of a defendant's guilt[.]" *Id*. at 282-283. "Such comments during closing argument will be reviewed in context to determine whether they constitute error requiring reversal." *Id*. at 283.

Lamb claims that the trial court erred by allowing the prosecutor to make improper comments expressing his personal knowledge of Lamb's guilt. During the prosecutor's rebuttal argument, the following exchange occurred:

[*The Prosecutor*]: And so, I do want to be considerate of [defense counsel's] request and answer the question he had for me.[2]  Why were the clothes all off?  Why did [Lamb] take his clothes off?  Why did he take [SB's] clothes off?  Why did he perform oral sex on her?  Well, you know, I don't know what was in his mind at the time he did this.

* * *

What I do know is that he did this.

[*Defense Counsel*]: Objection, your Honor.

[*The Prosecutor*]: What I do know—I heard an objection, your Honor.

*The Court*: Oh, I did not.  Go ahead.

[*Defense Counsel*]: Again, he's saying that he knows this.  That—

*The Court*: Well—

[*Defense Counsel*]: He's allowed to argue the evidence, but not to suggest that he knows this.

*The Court*: I agree.  Please—please go forward, [prosecutor]—

[*The Prosecutor*]: I'll be more precise.

*The Court*: Neither [the prosecutor], nor I, nor [defense counsel] are the fact finders here.

The prosecutor later added: "But we know [Lamb] had intercourse with [SB], and we know that he performed cunnilingus on her. And we know that he did that while she was unconscious." Following closing arguments, the trial court also instructed the jury that "[t]he lawyers' statements and arguments are not evidence" but "are only meant to help you understand the evidence and each sides' legal theories."

---

[2] During defense counsel's closing argument, he repeatedly suggested that it made no sense that Lamb would have taken off SB's clothes and his own clothes if he sexually assaulted SB while she was passed out:

> If you're the rapist, why take off all your clothes?  If you're the rapist, why perform oral sex on a person who's passed out.  If you're taking advantage of somebody, you're doing this crime of opportunity theme that the Prosecution was going with. Why would you do that?  And I hope [the prosecutor] answers that question during rebuttal.  Why take off all your clothes?

During trial, the prosecution introduced evidence showing that Lamb admitted to having sexual contact with SB, although Lamb claimed that the contact was consensual. Reading the record and the prosecutor's statements in context, it does not appear that the prosecutor was expressing his opinion of Lamb's guilt, but he was instead acknowledging the undisputed fact that sexual contact had occurred between Lamb and SB. Even if the prosecutor's statements amounted to an improper personal opinion of Lamb's guilt, the trial court agreed with defense counsel's objection and immediately cured any harm by instructing the jury that the prosecutor was not "the fact finder[] here." The trial court also later instructed the jury that the prosecutor's statements were not evidence and only meant to aid the jury in understanding the evidence and underlying legal theories. Because "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements and jurors are presumed to follow their instructions," *Unger*, 278 Mich App at 235 (cleaned up), Lamb has not shown that he is entitled to relief on these grounds.

Lamb also claims that the trial court erred by allowing the prosecutor to improperly vouch for SB's truthfulness and credibility. Although "the prosecutor is permitted to argue the evidence and all reasonable inferences arising from it," he is not permitted to "vouch for the credibility of a witness to the effect that the prosecution has some special knowledge concerning a witness' truthfulness." *Jackson*, 313 Mich App at 426 (cleaned up). But "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. (cleaned up).

Throughout trial, the prosecution claimed that Lamb engaged in nonconsensual sexual contact with SB because she was physically helpless as a result of consuming alcohol, marijuana, and prescription medication. By contrast, Lamb maintained that the sexual contact between him and SB was consensual, and defense counsel challenged whether SB was physically helpless or incapacitated. In support of this contention, defense counsel repeatedly challenged SB's and Valentia's credibility throughout the proceeding. Thus, a primary issue for the jury to resolve was the credibility contest between Lamb and SB and Valentia.

During closing arguments, the prosecutor made several comments about SB's credibility, including:

> So, is [SB] lying? You watched her testify. . . . I ask you if you think she's lying, then please come back not guilty. But I would ask how you could reach that conclusion when you consider not only the emotional trauma this has had on her that night. But it's still affecting her to this day. She has had to talk about this in front of strangers; intimate details. Who wants to go through that? One of the most important things she said when talking about whether she's lying is when she said, if I'm lying, we wouldn't be here. What woman would want to come in front of a bunch of strangers and talk about these details and go through the legal process like this. For what reason?

> There were theories given during voir dire and opening about why somebody would lie. But the evidence that came out of that chair did not back up any one of those possible theories that were put forth to you by the defense. . . .

Why would she make this up? And my gosh, if she's that good of a liar to where she can invoke that kind of trauma . . ., why are we not seeing her in Hollywood? That is some of the best acting you would ever see. It wasn't acting. It was not acting. Because she's not lying.

* * *

If she was lying, she wouldn't go through all this. If she wanted to get the Defendant in trouble for some odd reason and was lying, she would have done a better job of talking about being assaulted through intercourse. But she told you exactly what happened. . . .

I'll be back to talk to you in a little bit. The burden is on me to prove it to you. But as you're listening to [defense counsel] give his argument to you, I want you to keep in mind, why are we here if she's lying? There's no way to explain that. She's got nothing to gain; nothing. Why go through all this?

Ladies and gentlemen, this happened.

* * *

What I do know is I saw her testify. Just like you did. She was credible, she was consistent, and she went through a lot to talk to you about what happened to her.

Although the prosecutor's remarks discussed the credibility of SB's testimony, the remarks did not suggest that the prosecutor had any special knowledge that SB was testifying truthfully. See *Jackson*, 313 Mich App at 426. Instead, the prosecutor was simply arguing his theory of the case based on the evidence presented during trial. The prosecutor even told the jury that it should find Lamb not guilty if the jury believed that SB was lying. Because credibility was the central issue in the case, the prosecutor was permitted to comment on SB's credibility during closing arguments. Thus, Lamb has not established plain error that entitles him to relief on these grounds.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Lamb argues that his trial counsel's failure to object to the prosecutor's comments about SB's credibility denied him the effective assistance of counsel.

-11-

Because Lamb did not move for a new trial or an evidentiary hearing, his argument is unpreserved. See *Lopez*, 305 Mich App at 693. Therefore, our review is again limited to errors apparent on the record. *Unger*, 278 Mich App at 253. As stated, Lamb has not shown plain error in the prosecutor's statements during closing arguments. Therefore, defense counsel did not perform ineffectively by failing to raise meritless objections to these statements. See *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica